Submitted on briefs March 27, affirmed May 27, 1930

# HOGAN *v.* MASON MOTOR CO.

(288 P. 200)

*G. M. Roberts* of Medford for appellant.

*Keyes & Page* and *Fred A. Williams,* all of Salem, for respondent.

BROWN, J. The history of the car forming the subject-matter of this litigation is an eventful one. It is asserted by plaintiff and not disputed by defendant that, in June, 1923, defendant sold and delivered to one Robert Gordon, of Grants Pass, Oregon, one Durant sport touring car, motor number 109,860, model A-22. Gordon took possession of the car and operated it over the highways of the state until about October 2, 1923, when he collided with another car, to the serious damage of his own motor vehicle, including damage to the motor, the springing of the frame, and many minor injuries. The crippled Durant was taken to the Smith garage at Grants Pass, in which the defendant was at that time financially interested. There it remained in storage until the month of April, 1924, and, during this time, was repaired. The car was then traded back to defendant, and the defendant, acting through its president, caused it to be transferred to defendant's garage at Medford. Here it was renovated, two new tires were

put on, and, under the direction of the president of the defendant company, the speedometer was designedly turned back from 4,000 or 4,500 to 256 miles. The car was equipped with a dealer's license, and it was then placed upon the sales floor of the defendant's garage with the new cars.

The defendant, through its president and principal owner, in order to induce the plaintiff to purchase the car, represented to him that it was a new car, of the 1924 model. It was further represented that, on account of its excellence, the car had been used for a brief period for demonstration purposes, and this statement was apparently borne out by the mileage of the car as indicated by the speedometer. The plaintiff entered into a contract of purchase of the car. When he discovered that he had been induced by fraudulent representations to purchase the car, he chose to stand on his contract and sue for damages for the tort committed by the president of the defendant company in persuading him by means of fraud to make the purchase.

The plaintiff has alleged, and has established by some competent evidence, that the defendant, through its president, made false representations to him of material facts involving the purchase of the car. He has established that he believed the false representations to be true, and that his reliance thereon was an act of ordinary prudence. Furthermore, he has proved that these false representations influenced him to purchase the car, and that, as a result thereof, he sustained substantial damages.

The defendant assigns error of the court in denying its motion for a nonsuit, and in denying its motion for a directed verdict in favor of defendant made at the close of plaintiff's case in rebuttal.

██ This court has held time and again that a motion for nonsuit is in the nature of a demurrer to the evidence, and that such a motion admits not only all that the evidence proves, but all that it tends to prove. See *Collins v. United Brokers Co.,* 99 Or. 556 (194 P. 458); *Carty v. McMenamin & Ward,* 108 Or. 489 (216 P. 228). See also *Johnson v. Hoffman,* 132 Or. 46 (284 P. 567). It is also well settled in this state that a motion for a directed verdict presents the same question for decision as does a motion for judgment of nonsuit. For a collection of Oregon cases on this subject, we call attention to *Farrin v. State Industrial Accident Commission,* 104 Or. 452 (205 P. 984). A perusal of the testimony herein shows that some competent evidence was adduced in support of each material allegation of the complaint. Hence it was the duty of the court to deny the defendant's motion for nonsuit, and it was likewise its duty to overrule the motion for a directed verdict.

The defendant alleges that the court erred in refusing to give instructions numbered 4, 6, 7, 9 to 16 inclusive, 18, 23 to 27 inclusive, as requested by defendant, and in giving instructions numbered 2, 3, 8, 9, 10 and 15, as requested by plaintiff.

██ ██ After reading the transcript of evidence, together with the instructions of the court to the jury as given, the requested instructions given, and the instructions refused, we are singularly impressed with the volume thereof. The right of a party litigant to have his theory of the cause presented to the jury is unquestioned; but the right to ask instructions must have some limit. The refusal to give requested instructions which are fully covered by other instructions given does not constitute error. Nor does the fact that a refused instruction constitutes an accurate statement

of the law take it out of the rule, where its substance is embodied in other instructions given. See 1 Brickwood's Sacket on Instructions to Juries, § 209. At section 201 of the same work, there appears the following succinct statement, which should be helpful to a consideration of this subject:

"Instructions should always be clear, accurate and concise statements of the law as applicable to the facts of the case. It was never contemplated, under the provisions of the practice act, that the court should be required to give a vast number of instructions, amounting in the aggregate to a lengthy address. Such a practice is mischievous, and ought to be discountenanced. A few concise statements of the law applicable to the facts is all that can be required, and all that can serve any practical purpose in the elucidation of the case."

The court charged the jury as follows:

"To maintain his right to recover for the fraud, the purchaser must show that the false representations as to material facts were made to him; that he believed them to be true and his reliance on them was an act of ordinary prudence; that they influenced him to purchase the car. If any of these elements is unsustained, his whole case fails. The rule of *caveat emptor* imposes on him, who had an opportunity of inspecting the car before buying it, the duty of making reasonable examination, and, as to these defects which would have been discoverable to one in his situation who observed reasonable care, he can not complain of false representations of soundness."

■ This is not a case of mere commendatory statements uttered by the vendor in praise of the quality of the car, and generally known as "dealers' talk," "trade talk," "puffing," or expressions of opinion made by the vendor to the vendee in furtherance of a sale of that car. It is not a cause of action based upon mere exaggeration of the character of the car sold. It is a case where the seller has clearly and plainly transcended

lawful "dealers' talk" by wrongfully and designedly misrepresenting the history of the car to this plaintiff, the purchaser. It was more than "dealer's talk" to change the speedometer. It was more than "puffing" to put on new tires in order to corroborate the statements of the seller as to the age of the car. Nor was it merely "puffing" to say that the car had never been driven more than 258 miles as shown by the speedometer, when, in fact, it had been operated on the highways for several thousand miles. Moreover, the car had been rubbed up, polished, and designedly placed on the sales floor among the new cars, while all second-hand cars were kept in another part of the garage. This is a case where a second-hand, and a permanently damaged car, was sold as a new car of the manufacture of 1924. It was a sale based upon false and fraudulent representations. See 26 C. J., § 27, "Fraud." The distinction in the character of salesmanship, and the law applicable thereto, is directly presented in 2 Berry, Automobiles (6th Ed.), § 1778, where it is said:

"The general rule seems to be well settled that, where the parties deal fairly or at arm's length, the rule of *caveat emptor* applies, but when fair dealing is departed from by the vendor making false statements of fact as of his own knowledge, the falsity of which is not palpable to the purchaser, the purchaser has the undoubted right to rely implicitly upon such statements and the principle has no application, and in event the purchaser is entrapped thereby and afterwards calls upon the vendor in a court of justice to make compensation for his deceit, the law will not permit him to escape by urging the folly of his dupe nor by admitting that he, the seller, was a knave and a scoundrel, and averring the defrauded party was negligent and careless in thus believing and trusting him."

After a full consideration of all the errors assigned, we are satisfied that this case should be affirmed. It is so ordered.