Argued July 20; affirmed September 12; rehearing denied November 9, 1933

# HOLLAND *v.* HARTWIG ET AL.

(24 P. (2d) 1023)

*Victor R. Griggs,* of Salem (I. H. Van Winkle, Attorney General, and Miles H. McKey, Assistant Attorney General, on the brief), for appellant.

*Mark V. Weatherford* and *J. R. Wyatt,* both of Albany, for respondent.

KELLY, J. About 10:20 a. m. on the 26th day of March, 1931, Melbourne C. Holland, who will be referred to herein as decedent, was killed at the Jackson street railway crossing in Albany. At the time of his death, he was in the employ of the Albany Door Company, a corporation, which will be referred to as the Door Company. Defendant had been so employed for eighteen months immediately prior to his death. His working hours were from eight a. m. until twelve noon and from one p. m. until five p. m.

The Door Company maintained and operated two plants in Albany, one known as Plant No. 1 at 7th and Madison streets and the other known as Plant No. 2 at 11th and Hill streets.

Mr. E. V. Ferrin, who had accompanied decedent in his work for 60 or 70 days until the day before the fatal accident, testified in effect that decedent's duties included the operation of a Ford truck in hauling freight, sawdust, chairs, furniture and fuel known as "hog feed"; also that decedent took his fuel orders from the fireman. This witness also testified that decedent knew that, if there was any freight, it would have to start at four o'clock and so he would go in and ask the bookkeeper whether there was anything to

go out or not. This witness further testified that at times decedent would bring some furniture up to the Albany furniture dealers and occasionally would bring back something that had to be refitted; and that if the article to be transported was small, decedent used his own car, otherwise, he used the truck.

As a witness for defendants, Mr. H. C. Morris, manager of the Door Company, testified that decedent was employed as a truck driver; that his business was principally hauling fuel and other material from plant to plant; and that, on the morning of his death, decedent had been hauling fuel and possibly some other material earlier in the day. Mr. Morris also testified that employees of the Door Company were not supposed to take repairs down town when anything was broken without getting an order from some department head; and that no one had authority to leave the plant except with the authority of some official.

Mr. Morris also testified that decedent "was possibly—not in any particular department, he was working out of what we call plant Number Two that morning, he would have come under the supervision of that superintendent".

This witness also testified that William Harper, now deceased, was in charge of the filing room of the Door Company and had authority to have decedent go down town to get the machinery fixed which pertained to Harper's department.

Mr. Morris also testified that on the fatal morning decedent was not handling the sawdust in boxes; that he saw the Ford truck that morning at Plant No. 1 partly loaded and backed up to the fuel bin. He also testified that he made an investigation, but was unable to find anyone who had given decedent an order to go down town upon an errand.

By stipulation, the testimony of Mr. Harper, given upon rehearing before the Commission, was introduced in evidence and read to the court and jury. By this testimony, it appears that frequently decedent would go in his own car upon errands for the Door Company instead of going in the truck and that decedent made quite a few trips to the machine shops to get stuff repaired that belonged to the company.

We quote from Mr. Harper's testimony:

"Q. What is the fact about it being part of his" (decedent's) "job when this machinery was out of repair of having to take it to the shop to have it repaired? Did he have to do that?

A. That would not come under my observation because he was at the other plant but the only time I knew about was when I would call him to go to the shop for me and lots of times I would see him hauling the wood trucks with trimming and shavings and that is the only time I saw him simply because he stayed at Plant 2 and I did not go to this plant except when I was called. Lots of times when we had stuff that was small we would take his car and go and I would say to him for instance 'when will you have to go to the shop again' and maybe he knew and maybe not, and I would say, 'when you go down again bring that back and don't wait for me to call you and disturb the office, but the first time you get the chance then you go get it'."

Fuel boxes or trucks, to which metal wheels or castors were attached, were in use in the Door Company's plants by means of which mill ends and sawdust were transported; and, at times, in the course of his employment, decedent handled these fuel boxes or trucks by loading them upon the Ford truck at one plant and transporting them to the other plant.

It is admitted that the Albany Door Company had elected to protect its employees under the Workmen's

Compensation Act and to that end had complied with the provisions of said act.

The question to be determined herein is whether the trial court was justified in submitting the case to the jury. It is contended by the State Industrial Accident Commission, which will be referred to herein as the Commission, that there is no evidence in the record tending to prove that the accident which resulted in decedent's death arose out of or in the course of his employment. The Commission insists that the state of the record is such that an inference to that effect must be based upon not only another inference but a chain of inferences.

Reduced to simpler terms, therefore, the question is whether facts have been proved upon which an inference could be based to the effect that the accident, causing decedent's death, arose out of and in the course of his employment.

■■ The question may be further simplified by bearing in mind that in determining whether the cause should have been submitted to the jury, direct evidence of any fact or facts should be construed as proof thereof. Where any fact, even though disputed, is disclosed by direct evidence, such fact may support an inference, because, with respect to disputed testimony in solving the question here involved, it is not for the appellate court to determine what the truth is. This court has but to ascertain whether there is direct testimony which the jury could have construed as proving the fact in question.

■■ The testimony of Ferrin, who, as stated, was with decedent in his work constantly for sixty or seventy days until the day before the accident in suit, is to the effect that during said period of sixty or seventy days, decedent did not leave his employment on any

business of his own. From that, in the absence of any direct testimony whatever to the contrary, it could be inferred that on the day of his death he did not do so.

The Jackson street railroad crossing is upon the usually traveled route between the Door Company's plants and the Albany Iron Works and other machine shops where repairs were made for the Door Company. When decedent went down town from the Door Company's plant, he would cross the railroad at that crossing.

We quote from Ferrin's testimony:

"Q. When you were with him, and he was engaged in his usual work how often would he cross Jackson street, that is the Jackson street railroad crossing?

A. When we would be sent up town after something.

Q. And how many times would that be, ordinarily, a day?

A. Oh it would be—I don't think it would be more than two or three times a week, maybe."

Construing the foregoing excerpt of testimony most favorably to claimant, as we must for the purposes of the question involved, it discloses that in the course of his employment, decedent made from twenty to thirty trips across that crossing during the time Ferrin was with him.

Ferrin further testified that the manager of the Door Company, Mr. Morris, appeared at decedent's truck only once during that time. Manifestly, many of the trips decedent made across the railroad crossing were made without any orders from the manager.

In spite of Mr. Morris' testimony to the contrary, Mr. Harper's evidence, above quoted, when construed most favorably to plaintiff, discloses that decedent's employment embraced within its scope the exercise of some discretion on decedent's part as to when he

should go on an errand with reference to machinery which had been repaired, or was to be repaired, without waiting for express orders or for the head of the department to call him. This construction does not involve any inference. Decedent was told not to wait for an express order, but "the first time you get the chance then you go get it". Harper's said testimony is contradictory of Morris' testimony to the effect that decedent was not allowed to leave the place at any time without an express order from the head of a department or an official of the Door Company. Ferrin's testimony, in reference to decedent leaving the plant to deliver freight, is also contradictory of the manager's declaration that an employee was not supposed to leave the plant at any time during working hours without an express order from an official or the head of a department. On that point, Ferrin testified that decedent merely ascertained from the bookkeeper whether there was freight to be shipped. It appeals to us that it would be very unusual and cumbersome to require a truckman to obtain an express order each time freight was to be taken to the shipping point from the plant.

A wheel was found in decedent's car shortly after the fatal accident. There is direct evidence to the effect that similar wheels were in use upon the fuel boxes or trucks above mentioned. There is direct evidence that these wheels were constantly becoming detached from the trucks by reason of the bolts by means of which the wheels were attached being pushed through the woodwork. There is direct evidence that several such trucks or portable boxes were minus these wheels. There is direct evidence also that metal plates or bands had been in use reinforcing the portion of the trucks to which these wheels had been fastened, but these

metal bands had been lost. The wheel, itself, is physical evidence that to adapt a metal band to purposes of reinforcement of the wooden portion of the truck, holes through such reinforcing band or plate would have to be drilled to correspond with the holes upon the frame of the wheel through which the attaching bolts might pass.

With direct evidence that for sixty or seventy days consecutively, decedent did not go upon any errand personal to himself, during working hours; that during that time he went across the crossing in suit from two to three times a week in the course of his employment; that except upon one occasion there was no opportunity for decedent to have received any order directly from the manager of the company; in other words, that many of the twenty or thirty trips across said crossing were made by decedent in the course of his employment without any express order from the manager; that one of the subordinate heads of the company, with authority to do so, had directed decedent to use his discretion as to when he should go and get machinery which needed attention; that the portable boxes or trucks used for moving fuel in the plant of the company were in need of reinforcing plates to render them fully efficient; that the wheel in decedent's car at the time of the accident would afford means for determining where the necessary holes should be bored for such a reinforcing plate by the use of which at least one portable box could be improved by accommodating said wheel, and that such reinforcing bands and wheels, similar to the one in evidence were gone from several such portable boxes or trucks; and in the absence of any evidence whatever tending to show that decedent was on an errand personal to himself, we think that the jury could, at its option, infer that de-

cedent was upon his employer's business when he was killed. This inference, if drawn, would not be based upon any other inference; but upon the foregoing chain of facts.

We have held that, where undisputed direct testimony establishes a fact, an inference to the contrary cannot be invoked. *Judson v. Bee Hive Auto Service Co.*, 136 Or. 1 (294 P. 588, 297 P. 1050, 74 A. L. R. 944).

In the case at bar, however, as above stated, the direct evidence of Morris, restricting the right of decedent to leave the Door Company's plant to those occasions only when some official or head of a department expressly ordered him to do so, is itself contradicted by the direct evidence of Ferrin and Harper.

For the reasons above stated, the judgment of the circuit court is affirmed.

RAND, C. J. and BAILEY, J., concur.

CAMPBELL, J., dissents.

———

CAMPBELL, J. (dissenting). The Albany Door Company, an Oregon corporation, with its plants in Albany, Oregon, is engaged in the manufacture of wood products, using power-driven machinery and employs between eighty and ninety men. It and its employees are under the Workmen's Compensation Act. It operates two plants a few blocks apart, designated as Plant No. 1 and Plant No. 2, both located south of the Southern Pacific Company's railroad tracks which traverse the town of Albany in an easterly and westerly direction.

On March 26, 1931, Melbourne C. Holland was, and for about twenty months immediately prior thereto had been, in its employ as a truck driver and general

laborer for which he was paid at the rate of $2.50 per day. On that day, he began work at the usual time of eight o'clock in the morning, hauling fuel (sawdust, shavings and mill-ends) with one of his employer's trucks from Plant No. 1 to Plant No. 2, a distance of three or four blocks. Sometimes he was required to haul some of the products of his employer to transportation companies for shipment and occasionally deliver some to customers in the town.

There is located in the town of Albany, north of the Southern Pacific Company's railroad tracks, commercial iron works and machine shops where the Albany Door Company usually had its machinery repaired. From its Plant No. 2, where Holland generally worked, and where he worked on the morning of the accident, to these machine shops, the route generally taken would be over Jackson street which intersects the Southern Pacific Company's railroad tracks at right angles.

On the morning of March 26, 1931, the said employee, while driving his own automobile on Jackson street, away from the plant of his employer and in the direction in which the machine shops are situated, his car came into collision with a Southern Pacific Company train and he was killed.

A pivot wheel or large socket caster, similar to ones used in his employer's plant was found in his car and introduced in evidence as plaintiff's exhibit No. 1. This piece of equipment was not in need of repair. When such a wheel was in use in the plant, it would be attached to a large box in which the waste mill-ends, sawdust and shavings from the lumber manufacture were thrown. These boxes, when full, would be rolled onto the truck driven by Holland, hauled to the boiler room, where the contents were used as fuel, and returned when empty.

Plaintiff, widow of deceased, seasonably made claim for compensation to the Industrial Accident Commission. The commission found that the accidental injury, causing the death of deceased, did not arise out of and in the course of the employment of deceased and disallowed the claim. Prompt appeal was taken to the circuit court and the cause tried to a jury which returned a verdict in favor of plaintiff and judgment was entered thereon from which defendant appeals.

At the close of plaintiff's case in chief appellant moved for a non-suit and judgment of dismissal on the grounds that the evidence failed to substantiate the material allegations of the complaint in that it was not shown that the accident resulting in decedent's death was one arising out of and in the course of his employment.

At the close of all the evidence in the case, defendant moved the court for a directed verdict in its favor on the grounds that from all the testimony there was nothing to submit to the jury on the question of whether or not the accident which resulted in decedent's death was an accident arising out of and in the course of his employment.

Both of these motions were overruled by the court and appellant assigns the court's action thereon as error. We may consider these two motions together.

There is but one question presented by the record: Is there some competent evidence to support the verdict?

It is not necessary to cite authority to sustain the proposition of law that if there is some competent testimony to support each material allegation of the complaint on which the verdict is based the judgment of the trial court will not be disturbed.

That the accidental injury causing the death of deceased arose out of and in the course of his employment is a material allegation, is beyond cavil. We approach the consideration of the question by reminding ourselves, "that no exact formula can be laid down which will automatically solve every case". *Cudahy Packing Co. v. Parramore,* 263 U. S. 418 (44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532). The decision in each case must depend on its own peculiar facts and circumstances.

It is admitted that the Albany Door Company and its employees were operating under the Workmen's Compensation Law; it is undisputed that deceased began to work on the morning of the accident at eight o'clock; that his hours of employment were from eight to twelve and from one to five; that the accident causing his death occurred about ten-twenty a. m. and that he was driving his own car on Jackson street, Albany, Oregon, and that Jackson street would be the usual and generally travelled route between the Albany Door Company's Plant No. 2 and the Albany Iron Works where the said door company had much of its machinery repaired. It is also undisputed that at times in running errands for his employer deceased used his own car.

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund, shall sustain a personal injury by accident arising out of and in the course of his employment, caused by violent and external means, he or his beneficiaries or dependents, if the injury result in death, shall receive compensation according to the following schedule". Oregon Code 1930, § 49-1827.

It is admitted in the instant case that all the conditions of this act are present, except that the accidental

injury, which caused the death of deceased, arose out of and in the course of his employment.

It is also admitted that in order for the injury to deceased to have arisen "out of and in the course of his employment" said absence from the plant of his master at the time and place of the accident must have been on orders of a superior or he must have been doing something in connection with his master's business that he or other employees were accustomed to do with the knowledge and consent or acquiescence of his employer, or an emergency arose in his work that required him to leave the plant hurriedly on the master's business without direct authority.

There is no evidence that when deceased left the plant on his fatal journey he had any direct order or authority to do so. It is the contention of respondent that it was a custom of employees when any machinery needed repairing for the employee to have the repairs made without direct authority from a superior and that the employer knew of and acquiesced in this custom.

Mr. Miller of the Albany Iron Works, called as a witness on behalf of plaintiff, testified in effect that frequently broken parts of the machinery of the Albany Door Company were brought to his shop for repair; that these were brought to and from his shop by different employees of the Albany Door Company, sometimes in a truck and sometimes in an employee's car; that he did not know deceased personally and could not say whether deceased had ever done so or not.

Mr. Coates, superintendent of the same works, testified to the same effect.

Mr. Snyder who operated a blacksmith shop in Albany testified to the same effect.

The foregoing testimony might tend to establish the fact that the employees were accustomed to bring machinery to the shops for repair, but it does not tend to show that they did it without orders from a superior.

Emma Johnson, plaintiff's sister, testified that the night before the fatal accident she stayed at the home of deceased and rode to school with him in the morning in the car in which he was riding at the time of the accident; that she put her schoolbooks in the receptacle back of the seat, where the wheel (plaintiff's exhibit No. 1) was found after the accident, and that the wheel was not there then nor when she took the books out at about seven-fifty a. m. when she left the car.

C. V. Radford, a service station operator, testified that on several occasions deceased brought truck tires to his place to have repaired and on one occasion D. R. Faulkner, a mechanic who had a shop in connection with the service station, worked on the truck transmission gear. Faulkner testified that besides the work done on the transmission at that time, at another time deceased brought in his own car some coils for adjustment for the model "T" Ford truck belonging to his employer. This was service work for which there was no charge.

Mr. Ferrin, a friend of deceased and who had known him for several years, testified that for about two months in the winter of 1930 and 1931, although not employed by the door company, he helped deceased with his work about the plant; that deceased would once or twice a week use his own car to do errands for his employer; that he found the wheel (plaintiff's exhibit No. 1) in the deceased's car about one o'clock p. m. on the day of the accident; that there were similar wheels used in the Albany Door Company's plant on the fuel containers; he did not see the accident; the

only time that he knew of deceased going to a repair shop was once to inquire about his truck; that he does not remember of deceased ever hauling anything belonging to his employer to any of the repair shops.

Grace Johnson, a sister of plaintiff, testified that at one time she had been employed by the Albany Door Company on "shiftwork". One night in the fall of 1930 while working with deceased on a "sander", a wheel broke and deceased took it away, had it repaired and brought it back.

Plaintiff testified that on one occasion in the fall of 1930, deceased went to the Ford garage to see if his truck was repaired and that she accompanied him.

Mr. Harper, the master mechanic of the Albany Door Company, testified that deceased "made quite a few trips with his own car" in performing services for his employer at the request of the witness. He further testified "lots of times when we had stuff that was small we would take his car and go and I would say to him for instance 'when will you have to go to the shop again' and maybe he knew and maybe not and I would say, 'when you go down again, bring that back and do not wait for me to call you, and disturb the office, but the first time you get the chance then you go get it' ". He further testified that no work was sent to the machine shops from Plant No. 1 except by his order and that he only went to Plant No. 2 when called there to do some work.

We cannot say that the foregoing testimony tends to establish the custom claimed by respondent.

In considering a motion for a non-suit or a directed verdict, we must assume the testimony given in behalf of plaintiff and every reasonable intendment or inference to be drawn therefrom to be true, and such a motion should not be granted if there is some competent

evidence, introduced by either party supporting each of the material allegations of the complaint. *Hogan v. Mason Motor Company,* 133 Or. 14 (288 P. 200) ; *Johnson v. Hoffman,* 132 Or. 46 (284 P. 567), and other earlier Oregon cases too numerous to mention.

Adopting the foregoing rule and admitting all the foregoing testimony to be true, which we must for the purpose of motion for non-suit or directed verdict, yet it does not establish or tend to establish that any employee, including deceased, of the Albany Door Company ever took any machinery or equipment to be repaired at any shop north of the railroad tracks, without a direct order of some official in charge of a department; or that on the day of the accident deceased was on his way to a repair shop or was away from the plant on any business of his employer.

In addition thereto, there is the testimony of Mr. Morris, the manager of the Albany Door Company, to the effect that no employee was to take machinery to a repair shop or to leave the plant without such an order from a superior.

There is no evidence tending to show that deceased took any equipment of his employer to any shops for repair without being directly ordered by some superior to do so, except that given by Grace Johnson, his sister-in-law, regarding the one instance of the time the wheel on the "sander" broke, and that occasion could be considered as an emergency. There is no evidence that any emergency existed on the day of the accident. The boxes, so far as the casters were concerned, had been out of repair for some time. The socket caster, found in deceased's car, needed no repair. We cannot infer that, simply because the socket caster was found in deceased's car, he was on an errand for his master.

There is no evidence that any superior officer or official of his employer directed or ordered deceased to do anything on the morning of the accident that would require him to be away from the plant at the time of his injury. There is no evidence of any emergency that would call him away from the plant without orders. Admitting for the sake of the argument that it was the custom of the foreman, under which he worked, to engage him and his car to transport small pieces of machinery to repair shops, there is no evidence that it was the custom, or that any of the employees were expected to do so, or were known to have done so except on the order of a superior.

The most that may be said of the testimony of the master mechanic, Harper, is that when something had been taken to an outside shop for repair, he instructed deceased to go and get it without further orders from him. There is no evidence that any piece of machinery was away from the plant being repaired on the day of the accident.

Neither the immediate foreman of deceased on March 26, 1931, nor the superintendent of the plant, although both were available, were called as a witness.

The manager of the Albany Door Company testified that he investigated and could find no one who gave deceased an order to leave the plant for any purpose on that morning. In my judgment, the motion for a directed verdict should have been allowed.