Argued at Pendleton May 3; affirmed June 2, 1937

# STUART *v.* OCCIDENTAL LIFE INSURANCE CO.

### (68 P. (2d) 1037)

*Geo. E. Richards*, of Enterprise, for appellant.

*S. H. Burleigh*, of La Grande (Burleigh & Burleigh, of La Grande, on the brief), for respondent.

BEAN, C. J. This is an action by Rhelda Mildred Stuart to recover upon an insurance policy issued by the Occidental Life Insurance Company upon the life of her deceased husband, Kenneth Gould Stuart, which policy named her as beneficiary and insured Kenneth Gould Stuart against death in the amount of $1,000, and, as a part of said policy and as a supplemental agreement thereto, the company issued to said Kenneth Gould Stuart its additional accident indemnity contract, providing for the payment of the sum of $1,000 in the event of the death of said Kenneth Gould Stuart, resulting directly, independently and exclusively of all other causes from bodily injury effected solely through

external, violent and accidental means, and only if such death resulted within 90 days immediately succeeding the occurrence of such means, and only if such indemnity is not excluded by the provisions of said contract. It specifically provides that the indemnity therein provided shall not be payable if the death of the insured resulted directly or indirectly, wholly or partly from disease or from bodily or mental infirmity or from self-destruction, whether sane or insane, or from the voluntary or involuntary inhalation of carbon monoxide or any kind of gas or vapor, or from gunshot wound or wounds unless inflicted through accidental means in the presence of a known witness, or from food poisoning or from bacterial infections (other than infection occurring simultaneously with and in consequence of an accidental cut or wound), or from childbirth.

The cause was tried to the court and jury and a verdict returned in favor of plaintiff for the sum of $2,000. Defendant appealed.

The testimony tended to show that Kenneth Gould Stuart was a man 26 years of age who had always been strong and able-bodied and never had any illness other than ordinary head colds and who was in good health and going about his usual duties just prior to the 27th day of May, 1936, the date on which he was engaged in fighting a fire, when he suffered accidental injuries which later resulted in his death. The insured was a member of the volunteer fire department of the city of Enterprise, Oregon. Twice during the time he was engaged in fire fighting he was accidentally enveloped in smoke, soot and flames, in such a manner that he was unable to get away without suffering injury. The first time was while fighting fire from a ladder, when smoke and flames burst unexpectedly and without warning from a window, so that he was enveloped in smoke and

flames, until the hose could be changed to drive the smoke back. The second time, which was the more serious accident, was while he was engaged in fighting fire inside the building and a section of the ceiling collapsed and fell upon the insured, enveloping him in smoke, soot and fiery debris. Immediately after the fire the insured complained of a pain in his lungs, which continued for a period of about 10 days and resulted in pneumonia, from which he died. The insurance company tendered $1,000 for the insurance against death and denied liability as to the accident indemnity contract.

■ Defendant assigns error in permitting the witnesses to relate declarations made by the insured in regard to pain in his lungs after the alleged accident, claiming their testimony was hearsay and incompetent. It has been declared the law in this state that whenever it becomes material to show a person's condition of health, a declaration of the person as to present pain or suffering is admissible as evidence: *Thomas v. Herrall & Zimmerman,* 18 Or. 546, 548 (23 P. 497); *Weygandt v. Bartle,* 88 Or. 310, 319 (171 P. 587); *Derrick v. Portland Eye etc. Hospital,* 105 Or. 90, 99 (209 P. 344). In *Thomas v. Herrall & Zimmerman,* supra, an action for damages, the plaintiff's witness was permitted to testify in regard to plaintiff, that "She said it hurt her there under her right arm." It was held that the evidence was within the principle laid down in 1 Greenleaf's Evidence (16th Ed.) 254, § 162b, where it is said:

"The representation by a sick person of the nature, symptoms, and effects of the malady under which he is laboring at the time, are received as original evidence; if made to a medical attendant, they are of greater weight as evidence; but, if made to any other person, they are not on that account rejected." Citing authorities.

In *Weygandt v. Bartle,* supra, a damage action, plaintiff's witness was permitted to testify that on the day after the injury plaintiff complained of pain in his side. It was held that the statements or declarations of plaintiff were properly admitted in evidence for the purpose of showing the condition of his health, which was in issue.

■ The statements of the deceased, although not a part of the res gestae, appeared to have been the natural and spontaneous utterances of the deceased in regard to the pain which he felt. The testimony was admissible and there was no error in the ruling of the court in respect thereto.

The authorities cited by defendant do not support its contention in this respect. In such cases as *Zion's Cooperative Mercantile Institute v. Industrial Acci. Com. of Utah,* 70 Utah 549 (262 P. 99), the inhibition is in regard to evidence of how and when the accident in question occurred and not as to an expression of pain, as in the present case, where there was no narration of the circumstances of how the accident happened contained in the statement of the deceased, as testified to by the witnesses.

■ The second error is predicated on the court's denying defendant's motion for a nonsuit as to the defendant's liability under the additional accident indemnity contract. The defendant submits that the company may, in its policy, make special exceptions as to causes of injuries, citing *Hawkeye Commercial Men's Ass'n v. Christy,* 294 Fed. 208 (40 A. L. R. 46). We do not question the right of the parties to make the contract contained in the policy of insurance, and plaintiff has the burden of establishing, as a part of her case, the death of her husband resulting from an accidental

injury of the kind covered by the contract. This may be established by circumstantial evidence: *Mutual Ben. Health & Accident Ass'n v. Basham,* 191 Ark. 679 (87 S. W. (2d) 583).

It is contended by defendant that the cause of Stuart's death was pneumonia. The testimony, especially of the physicians, tended to show that the pneumonia was caused by an accidental injury, inhaling smoke, soot and fire, received at the time the ceiling fell upon the deceased. In 1 C. J. 430, § 75, we read:

"A disease contracted as the result of an injury such as is contemplated by a policy of accident insurance may be within the protection of the policy; and this rule has been applied to permit a recovery where the insured contracted Bright's disease, fever, kidney disease, peritonitis, pneumonia, rheumatism, or tetanus, or where a complication of diseases has resulted. But where nothing of an accidental nature has contributed to bringing on the disease it is of course not within the protection of an accident policy." See also *Preferred Acc. Ins. Co. v. Patterson,* 213 Fed. 595.

There were four physicians who testified as experts in regard to the cause of the death of Kenneth Gould Stuart. Their testimony was practically to the same effect. Dr. A. F. Martin testified that a traumatic condition or traumatic pneumonia is one caused by an injury of some sort; that he attended Kenneth G. Stuart during his last sickness, approximately five days, and that he died of pneumonia which he classified as traumatic pneumonia. He further testified:

"Q. And from the information you gathered from your treatment of this patient, and the history of the case, as it naturally came to you as a physician, what would you say was the cause of the trauma or injury to the lungs?—of Mr. Stuart?

A. Inhalation of smoke while fighting fire, I guess, was the cause.

Q. Would the inhalation of that smoke and soot into his lungs there create a trauma or injury of the tissues of the lungs that would develop into pneumonia?

A. It would create an injury there which would (give) the pneumonia a chance to develop.

Q. And from your knowledge of the case and the history of the case, it is your opinion that that is what occurred, is it?

A. That is my opinion, yes.''

The testimony tended to show, and the jury was warranted in finding, that the death of Kenneth G. Stuart resulted directly, independently and exclusively of all other causes from bodily injury effected solely through external, violent and accidental means, namely, the accident of the falling ceiling upon Stuart, with smoke, soot and cinders which he inhaled and that such accident was not excluded by the provisions of the policy.

Dr. E. L. Landers, who was in consultation with Dr. Martin, testified in answer to an interrogatory, as follows:

''A. I view of the circumstances that occurred before he contracted pneumonia, and the thing that I looked to most as a causative factor, and that lowered his resistance, was being at this fire and inhaling smoke from it; that seemed to be the outstanding and primary cause that started this thing off.''

Based upon the statement of the case, the doctor was asked: ''What is your present opinion as to the cause of the pneumonia from which he died?'' He answered: ''My present opinion in all probability the inhalation of smoke caused the pneumonia.''

Dr. C. T. Hockett testified in regard to the matter:

''Well I would think it was quite probable that the pneumonia was the result of the trauma or injury to the lungs caused by the inhalation of the smoke and dust.''

Dr. C. A. Ault, as witness for the defendant, on being asked the following hypothetical question:

"Now Doctor, assuming that the evidence shows, that a young man twenty-six years of age, who has always been strong and able-bodied and never had any illness other than ordinary head colds, and who was in good health and going about his usual duties just prior to the 27th day of May, and on the night of the 27th day of May while engaged in fighting fire, he was caught in a hallway in a building where the fire was burning, and the ceiling caved in which enveloped him in smoke and soot, and with such a result that he choked and was forced to get out of that place,—unable to breath in there, and the next morning he complained of his lungs hurting him and of tasting smoke, and he continued to complain of his lungs hurting him and bothering him and difficulty with his breath for the next week or ten days, and that he on the 9th of June following took sick, and was forced to take to his bed and call a doctor, and his ailment was diagnosed as pneumonia, from which he died within just a few days, what in your opinion in all probability would you say was the primary cause of the development of the pneumonia?"

answered:

"The lowered resistance of the individual, plus the irritation produced by the inhalation of the smoke, which prepared the soil pretty well in that particular individual for the development of pneumonia of a fatal type, which showed itself later on."

■ Where there is substantial evidence to support the allegations of plaintiff's complaint, the case should be submitted to the jury and a nonsuit should not be allowed: *Maneff v. Lamer,* 152 Or. 619 (54 P. (2d) 287) ; *Thienes v. Francis,* 69 Or. 165 (138 P. 490) ; *Myrtle Point Transportation Co. v. Port of Coquille River,* 86 Or. 311, 315 (168 P. 625) ; *Siskel v. Calhoun,* 147 Or. 606 (34 P. (2d) 659) ; *Jensen v. Commercial Travelers*

*Mut. Acc. Ass'n of America,* 247 App. Div. 835 (286 N. Y. S. 306).

In *Kramer v. New York Life Ins. Co.* (Mass.) 200 N. E. 390, an action for "double the face of this policy upon receipt of due proof of the death of the Insured resulting directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty (60) days after sustaining such injury", we read, at page 391:

"Two doctors, who had not examined the insured in his lifetime, were called by the plaintiff and asked hypothetical questions based on the history of events as given above. Each was asked whether, assuming the facts to be as hypothetically stated, he was 'able to form an opinion as to what this man (the insured) died of' and, over the defendant's objection and exception, answered subject to the defendant's objection and exception, 'Yes'. They then testified that the fall caused lowered resistance of tissues in the region of the left buttock, and the harmless organisms of the streptococcus class, which in a harmless form are present in everyone, and which were in the insured's blood stream, became active, and the infection spread through the blood stream to his knees, developing into septic arthritis." In that case the judgment was sustained.

In *Order of Railway Conductors of America v. Gregory,* (Tex.) 91 S. W. (2d) 1139, we read:

"The policy in the instant case provides: 'This department shall not be liable in case of injuries, fatal or otherwise  *  *  *  of which there are no visible marks upon the body.' Appellee contends that the 'infection' clause covers only external, as distinguished from internal, infection, and that it was so intended by appellant. Appellee says that, if this contention is not correct, 'then any injury which in turn produces internal infection of some character is not a compensable

accident because there is no showing that the infection was introduced into or by and through an open wound.' Under the facts of this case, and considering all applicable provisions, we are of the opinion the so-called 'infection' clause was not intended to operate or apply to the present facts as found by the jury. On the contrary, we think the 'infection' clause was intended to and does apply to bacteria entering the surface of the body, and not to cases like the present one, where infection or disease is caused to operate internally as a result of an external injury. Under the facts as found by the jury, Gregory's death was caused by his accidental fall upon the railway ties, and was not caused by infection or disease. It may be conceded that peritonitis in its technical or medical sense may be an infection, but, as heretofore stated, we are to consider the word as it is used and understood by a layman.''

In *Donohue v. Washington Nat. Ins. Co.*, 259 Ky. 611 (82 S. W. (2d) 780, 784), it is said:

''The words, 'accident,' 'accidental', and 'accidental means,' as used in insurance policies, have never acquired a technical meaning in law, and must be interpreted from the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the Insured. * * *.''

The syllabus reads:

''Whether injury to hip and subsequent disability sustained by insured when, while lifting 40-pound can of oil on to truck, he was stricken with severe pain in hip, causing him to fall to ground, striking on hip, resulted from accident sustained through accidental means within meaning of accident policy held for the jury.''

Further, in the Donohue case, we find the court said:

''We find the general trend of authority to be as stated in the case of United States Mutual Accident Association v. Barry, 131 U. S. 100, 9 S. Ct. 755, 762,

33 L. Ed. 60, 'that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means.' "

In the present case there can be no question that the act which preceded the injury was something unforeseen, unexpected and unusual, which produced the injury and the injury resulted through accidental means.

"Accidental" is defined in Webster's New International Dictionary (2d Ed.), as follows:

"Happening by chance, or unexpectedly or not according to the usual course of things; casual; fortuitous; as an accidental visit."

In 1 C. J. 427, § 73, we read:

"Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means." To the same effect, see Cooley's Briefs on Insurance, 3156.

In *St. Clair v. Washington Fidelity Nat. Ins. Co.,* (Mo. App.) 89 S. W. (2d) 85, the evidence showed that the collision between insured's automobile and a street car, resulting in insured's death, was "accidental", and whether the provision exempting the company from liability for injuries sustained in violation of law was applicable, because of some evidence of violation of the traffic law, was a question for the jury. See *Reed v. Mass. Bond & Ins. Co.,* 98 Colo. 257 (57 P. (2d) 697); *Rowden v. Travelers' Protective Ass'n,* 201 Ill. App.

295; *Rowe v. United Commercial Travelers' Ass'n*, 186 Iowa 454 (172 N. E. 454, 4 A. L. R. 1235).

Under the law, the terms "gas" and "smoke" have different meanings. "Gas" has been defined by the court as an aeriform liquid having noxious or poisonous qualities, while "smoke" is defined as fine particles of solid matter finely diffused through the air: *Birss v. Order of United Commercial Travelers*, 109 Neb. 226 (190 N. W. 486).

■ Upon motion for nonsuit every intendment and every reasonable inference should be made in favor of plaintiff and the court must assume those facts as true which the jury can fairly find from the evidence: *Thienes v. Francis*, supra.

■ In the instant case the evidence showed the insured, while engaged in his duties as a fireman fighting fire, was caught by a falling ceiling so that he was enveloped in smoke, soot and burning materials, and he was forced to inhale the smoke, soot and flames to such an extent and in such a manner that he was internally and externally injured, and that his death was the direct result of these injuries. The testimony as to his being caught by the falling ceiling and being enveloped in smoke, soot and burning debris was direct and positive. The injuries are shown by the declarations of the deceased as to bodily pain after the accident and by the testimony of the doctors. The evidence of the doctors further shows that the death of deceased was a direct result of the injuries which he sustained at that time.

The following quotation from *Burkhard v. Travelers' Ins. Co.*, 102 Pa. 262 (48 Am. Rep. 205), is found in *Horton v. Travelers' Ins. Co.*, 45 Cal. App. 462 (187 P. 1070):

"* * * A great distinction exists between a voluntary act and a voluntary exposure to danger. Hidden

danger may exist; yet the exposure thereto without any knowledge of the danger does not constitute a voluntary exposure to it. The approach to an unknown and unexpected danger does not make the act a voluntary exposure thereto   *   *   *.   The act may be voluntary, yet the exposure involuntary. The danger being unknown, the injury is accidental.''

We quote the language of the late Mr. Justice BURNETT in the case of *Kendall v. Travelers' Protective Ass'n,* 87 Or. 179, 190 (169 P. 751) :

"A man's leg might be broken by a runaway team coming suddenly upon him from behind. He might reasonably expect to be confined to his bed for some weeks and yet the cause of the fracture would be accidental. On the other hand, he might purposely inflict upon himself a slight pin scratch which would ordinarily pass unnoticed and septicaemia might ensue and unexpectedly amputation of the injured part might become necessary, yet the scratch would not be accidental. *In other words, under such a policy as this the liability must be determined by causes rather than consequences.*'' [Italics ours.]

We also take from a well-established canon for the construction of contracts of the sort under consideration, quoted from *Switchmen's Union of North America v. Colehouse,* 227 Ill. 561 (81 N. E. 696), at page 193 of *Kendall v. Travelers' Protective Ass'n,* supra :

"The laws and rules of the appellant are to be construed liberally in favor of appellee, so as not to defeat the object and purpose of the insurance or indemnity:   *   *   *   [Citing cases].   Where it is sought to narrow the range of liability by insurance companies or societies, equivocal expressions are to be interpreted most strongly against the company.   *   *   *   The language of the policy, particularly in determining whether the liability is limited, is always to be strictly construed against the insurer.   *   *   *''

In *Hawkeye Commercial Men's Ass'n v. Christy,* supra, we read:

" 'That contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.' 151 U. S. 463."

██ Defendant takes the position that the injuries received by the deceased in the accident were due to gas or vapor; therefore he was excluded from the policy. The policy should be interpreted from the usage of the average man. We do not think, within the meaning of the policy, that smoke, soot and embers would be classed as gas or vapor or excluded from the policy.

█ Defendant contends that the court erred in giving instructions numbered 3, 5, 6, 7 and 18, and argues that instruction No. 3 is erroneous and misleading and does not distinguish between the terms "accident" and "accidental means". The instructions of the court to the jury should be considered as a whole and the individual instructions must be read in connection with the remainder of the charge: *State v. Megorden,* 49 Or. 259, 269 (88 P. 306, 14 Ann Cas. 130) ; *Suey v. Benson Hotel Co.,* 91 Or. 395, 400 (179 P. 239) ; *State v. Walters,* 105 Or. 662, 670 (209 P. 349) ; *Mathews v. City of La Grande,* 136 Or. 426, 438 (299 P. 999). We have carefully read all of the instructions of the court to the jury and are firmly convinced that the issues presented were fairly submitted to the jury.

█ The criticism of defendant in regard to instruction No. 3 fades into insignificance when we notice instruction No. 10, where the court charged the jury that the burden is on the plaintiff to prove that the death of

the said Kenneth G. Stuart resulted from "external, violent and accidental means, exclusively, either directly or indirectly, wholly or partially from disease". The court further instructed that this may be established by either direct or circumstantial evidence.

Defendant suggests that under an insurance policy covering death from bodily injuries, which, independently of all other causes, are effected solely and exclusively by accidental means, if a disease plays a part in the death of the insured after an accident it is essential to recovery on the policy that such disease was due to the accident. The testimony in the case tended strongly to show that the pneumonia with which Stuart was afflicted was due to and caused by the accident.

A similar objection is made to instruction No. 5, where the court qualified his instruction by the use of the following language: "And that the death of the said Kenneth G. Stuart was the proximate result of said accident." We think this was a very pertinent and proper instruction, and practically what the defendant claimed.

The defendant criticises instruction No. 6 for the reason that the court, in referring to the disease, said if the death of the insured "resulted without any disease existing prior to said accident". The court plainly defined the kind of disease in instruction No. 4, which is as follows:

"I further instruct you, Gentlemen of the Jury, that a death resulting directly or indirectly, wholly or partially from disease, means a disease existing prior to the time of the alleged accident, or arising separately and independently of the accident; and that, if you find from the preponderance of the evidence in this case, that the direct cause of the death of deceased, was a disease arising after the accident, and as the proxi-

mate result of said accident, that such disease does not come within the meaning of the words directly or indirectly, wholly or partially resulting from disease.''

It cannot be expected or desired that the court will repeat all former instructions in each instruction it gives, but the instructions must be taken as a whole. Instruction No. 4 obviates the objection made to instruction No. 6.

■ Defendant criticises instruction No. 10 for the reason that it does not use the word ''solely'' but uses the word ''exclusively'' in the following phrase:

''I instruct you, Gentlemen of the jury, that the burden is upon the plaintiff to prove that the death of the said Kenneth G. Stuart resulted from external, violent and accidental means, exclusively, either directly or indirectly, wholly or partially from disease; * * * ''

The word ''exclusively'' is used twice in instruction No. 10 and imports the same meaning as though ''solely'' had been used. However, in instruction No. 17, which we understand was requested by defendant, the word ''solely'' is used as follows:

''I instruct you, Gentlemen of the jury, that, if after carefully considering all of the evidence in this case, there should be a doubt in your mind as to whether the death of Kenneth G. Stuart resulted directly, independently and exclusively of all other causes from bodily injury, effected *solely* through external, violent and accidental means, as provided under the terms of the Accident Indemnity Contract, then you should find for the defendant insofar as liability under the Accident Indemnity Contract is concerned.'' [Italics ours.]

When all of the charge to the jury is taken and considered together, the objections made by defendant are obviated. This instruction is more favorable to the defendant than it was entitled to, wherein the court referred to doubt.

The argument of defendant, that the instructions of the court precluded the jury from considering whether or not the pneumonia, which developed after the accident, might not have been the result of the accident but might have developed from some other cause, is not borne out by a careful reading of the instructions.

In *Suey v. Benson Hotel Co.,* supra, the court said:

"We do not understand that a trial court must incorporate all of the law relative to a given state of facts into one sentence or into one paragraph of his charge, but that it is sufficient if upon a consideration of the entire charge, he has given to the jury a clear statement of the legal principles involved, sufficient to enable them to arrive at a just verdict upon the facts."

■■ Defendant contends that the court erred in failing to give defendant's requested instruction No. 5. It is not error for the court to refuse to give the requested instructions which were substantially covered by the instructions which were given: *Hogan v. Mason Motor Co.,* 133 Or. 14, 17 (288 P. 200); *Mathews v. City of La Grande,* supra. This request is as follows:

"I instruct you, Gentlemen of the jury, that the effect, which is the natural and probable consequence of an act or course of action, cannot be said to be produced by accidental means, and if you find from the evidence in this case that an injury was suffered by the insured, which was the natural result of the voluntary act of the insured in engaging in fighting fire, unaccompanied by anything unforeseen, or not to be expected, except the death or injury, then I instruct you that the death of the insured was not the result of accidental means within the terms of the Accident Indemnity Contract, and the defendant would not be liable thereunder."

Defendant was not entitled to this instruction.

■ Assignment of error No. 6 is that the court erred in refusing to give defendant's requested instruction No. 10, which is as follows:

"I instruct you, Gentlemen of the jury, that the term vapor means any diffused substance floating in the air, and impairing its transparency, such as fog, steam, smoke, etc."

We do not think that the requested instruction was in conformity to the facts in the case or pertinent to the issues.

The defendant pleaded no affirmative defense and asked for no directed verdict when the testimony was all in. Testimony, after the ruling upon the motion for nonsuit, was introduced by defendant. The testimony of plaintiff's witnesses supported every allegation of plaintiff's complaint and was sufficient to take the questions of fact raised to the jury. The instructions of the court thoroughly covered the issues made by the pleadings and proof. The requested instructions, refused by the court, are either fully covered by instructions given or plainly not with the issues and proof.

We think the case was fairly tried. The judgment is affirmed.

BAILEY, RAND and ROSSMAN, JJ., concur.