542 So.2d 494 (1989)
CAPITAL BANK & TRUST COMPANY
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.
No. 88-C-2402.
Supreme Court of Louisiana.
May 1, 1989.
Rehearing Denied June 2, 1989.
*495 Brian A. Eddington, Stanley Aaron, Roy, Kiesel, Aaron, Tucker & Zwick, Baton Rouge, for applicant.
Peter Dazzio, Watson, Blanche, Wilson & Posner, Baton Rouge, for respondent.
WATSON, Justice.
In this suit to recover accidental or double indemnity death benefits under three life insurance policies issued by defendant,[1] the primary issue is whether death from asphyxiation by smoke inhalation is within a policy exclusion[2] for death resulting from inhalation of gas or fumes.[3] The Federal Deposit Insurance Corporation (FDIC) has been substituted as plaintiff for Capital Bank because of the bank's insolvency.

FACTS
The initial plaintiff[4] was assigned the proceeds of three policies insuring the life of Shepherd James Roy, Sr. The original beneficiary of one policy for $100,000 was Central Pecan Shelling Co. and the beneficiary of two other policies for $25,000 each was Audrey M. Roy, the decedent's widow.
Roy died when a fire ignited inside his business, the Central Pecan Shelling Co. in Mansura, Louisiana. It was stipulated that Roy's death was not a homicide or suicide.
On Sunday, June 3, 1984, at approximately 7:20 p.m., a fire was reported at the Central Pecan Shelling Co. The owner was found dead just inside a "cooler" in the locked building. Roy had keys only for the front office door of the building. Earlier *496 the previous day, he had borrowed keys to the back door and the building's walk-in freezer or cooler from his employee Batiste. Roy's truck had been left at the rear of the building. It contained an unopened thirty pound box of pecan meal. Also in the truck were three papers which had been inside the freezer on the Friday before the fire.
Mr. and Mrs. Roy had filed for protection under Chapter XI of the Bankruptcy Code which was effective that Friday.
Charcoal lighter fluid, matches and open boxes of shortening found at the scene indicated that Roy or persons unknown were attempting to burn the plant when Roy was overcome by fire or smoke.
The death certificate gives three causes of death: (1) asphyxiation (the immediate cause); (2) inhalation of toxic urethane smoke and fire; and (3) fire (the underlying cause). Contributing to the death were first, second and third degree burns and a coronary thrombosis.
The autopsy report concluded that Roy's death resulted from:
"Second and third degree burns over approximately 50% of the body.
Severe smoke inhalation.
Pulmonary hemorrhage and edema secondary to # 2.
Atherosclerotic heart disease.
Post coronary bypass surgery.
Old posterior inferior myocardial fibrosis.
Severe coronary artery disease with hemorrhage into plaque but no occlusion."[5]
It was stipulated that the coroner and the doctor who performed the autopsy would testify that more probably than not the cause of death was smoke inhalation.
The trial court denied recovery of accidental death benefits and the court of appeal affirmed in an unpublished opinion. A writ was granted to consider the judgment.[6]

LAW AND CONCLUSION
Insurance policies are liberally construed in favor of coverage, and exceptions to coverage are strictly construed against the insurer. LSA-C.C. art. 2056.[7] Any ambiguity is construed in favor of coverage. Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111 (1953). The insurer has the burden of proving that a policy exclusion precludes recovery. Lado v. First Nat. Life Ins. Co., 182 La. 726, 162 So. 579 (1935).
Except for technical terms, the words of a contract must be given their generally understood meaning. LSA-C.C. art. 2047.[8] To a person of average understanding, smoke would not be regarded as a gas or vapor excluded from a policy's coverage. Stuart v. Occidental Life Ins. Co., 156 Or. 522, 68 P.2d 1037 (1937).
The term "gas" in an exception clause should be given its ordinary meaning: "any substance in its aeriform state, having noxious or poisonous qualities, as distinguished from smoke or dust, which is matter in a solid state finely diffused through the air." 10 Couch on Insurance 2d (Rev. ed.) § 41:534 (1982). Also see 6 R. Cooley, Briefs on the Law of Insurance at 5341 (2d ed. 1928).
While the word "fumes" can denote smoke, it is primarily defined as: "a gaseous emission (as from a burning or evaporating substance) that is usu. odorous and sometimes noxious."[9] Since the word *497 fumes is subject to more than one definition, it is ambiguous and must be construed against the insurer.
When the immediate cause of death is suffocation or asphyxiation from smoke inhalation, accidental death benefits are not excluded by a policy provision exempting death which results from inhaling gas. Spence v. New York Life Ins. Co., 154 Kan. 379, 118 P.2d 514 (1941). Spence noted that the policy did not specifically exclude death from suffocation or asphyxiation. Compare Stone v. Physicians Casualty Ass'n. of America, 130 Neb. 769, 266 N.W. 605 (1936) where the policy excluded suffocation by gas and Harrington v. Interstate Business Men's Acc. Ass'n, 210 Mich. 327, 178 N.W. 19 (1920) where the policy excluded "asphyxiation by any kind of gas."
According to the certificate of death, Roy's immediate cause of death was asphyxiation from lack of oxygen. The autopsy report gives the first cause of death as burns. It was stipulated that the most probable cause of death was smoke inhalation. Neither suffocation, burns nor smoke inhalation are excluded under the policies.
Here, as in Spence, the policy provision is ambiguous. Construing the ambiguity against the insurer, a distinction can be made between suffocation from smoke inhalation and death which results from inhalation of gas or fumes. Since suffocation, burns and smoke inhalation are not specifically exempted as causes of accidental death in the Roy policies, the insurer is liable for the accidental death benefits. An award of penalties and attorney's fees is not appropriate under the circumstances.

DECREE
For the foregoing reasons, the judgment of the court of appeal in favor of the defendant insurer, The Equitable Life Assurance Society of the United States, is reversed and:
IT IS ORDERED, ADJUDGED AND DECREED that The Equitable Life Assurance Society of the United States pay the accidental death benefits of ONE HUNDRED FIFTY THOUSAND AND NO/100 ($150,000.00) DOLLARS on the life of Shepherd James Roy, Sr., to the substituted plaintiff, the Federal Deposit Insurance Corporation (FDIC), plus legal interest from the date payment became due under the terms of the policies.[10]
REVERSED AND RENDERED.
CALOGERO and LEMMON, JJ., concur and assign reasons.
DIXON, C.J., dissents with reasons.
MARCUS, J., dissents for reasons assigned by DIXON, C.J.
CALOGERO, Justice, concurring.
I concur in the result reached by the majority opinion, but respectfully differ from some of the reasoning which the majority employs to reach that result.
I am not prepared to conclude, as does the majority, that the policy phrase "gas or fumes," when interpreted according to its common and ordinary meaning, does not apply to smoke. However, the resolution of the coverage issue presented in this case need not, in my view, turn on technical distinctions between the terms "smoke," "gas" and "fumes."
The underlying cause of the insured's death was fire, and death caused by fire is a covered risk under the policy. It cannot be seriously contended that policies such as the one at issue here afford coverage for fire related deaths only when the insured is actually burned to death, and not when the insured, trapped in an enclosed space by a fire, dies of smoke inhalation and does not actually perish from burns.
And yet, if the policy exclusion at issue were applicable to this situation, the insured's beneficiaries would be denied coverage for the reason that he suffocated prior to being being burned, whereas in any essentially similar case involving a fire, where the autopsy shows that the insured died from burns prior to suffocating, coverage *498 would be allowed. Such disparate results where the essential cause of death (fire) is the same would be absurd. Even when the words of a contract are unambiguous, a reviewing court should refrain from construing them in such a manner as will lead to absurd consequences. Cashio v. Shoriak, 481 So.2d 1013 (La.1986). When literal interpretation will produce absurd consequences, the court may consider all pertinent facts and circumstances, rather than adhere to a forced meaning of the terms used. Id.
In my view, this case can be resolved in favor of coverage on the simple ground that the parties could not have reasonably intended that the policy exclusion for death resulting from inhaling "any drug, poison, gas or fumes" would apply where the insured is trapped in a fire and dies from smoke inhalation. This conclusion was reached in a coverage dispute involving a similar policy exclusion, Tuttle v. Gamble Alden Life Ins. Co., 385 F.Supp. 1352 (N.D. Tex.1974), aff'd 531 F.2d 573 (5th Cir.1974).
For these reasons, I respectfully concur.
LEMMON, Justice, concurring.
I agree with the concurring reasons assigned by Justice Calogero. I also write separately to discuss the purpose of this particular exclusion.
The clear purpose of the exclusion was to eliminate coverage for accidental death benefits when there was either a provable suicide or a death caused by circumstances which generally involve suicide, but may not generally be provable by the insurer who has the burden of proving the exclusion. A specific exclusion as to inhalation of gas, which is a common method of committing suicide, is often included in insurance policies, because it is easier to prove the means of death than the intention of the decedent. 1B J. & J. Appleman, Insurance Law and Practice § 438 (1981).
The policy may validly exclude both the voluntary inhalation and the involuntary inhalation of gas, as long as the language clearly evidences this intent. W. Vance, Law of Insurance § 187 (B. Anderson 3d ed. 1951). If the language is ambiguous, however, the doubt must be resolved in favor of the beneficiary.
The term "gas" (or "fumes") must be given its common and ordinary meaning, and should be construed to cover any substance in its aeriform state, as distinguished from smoke or dust, which is matter in a solid state finely diffused through the air.[1] 10 G. Couch, Cyclopedia of Insurance Law § 41:534 (M. Rhodes rev., 2nd ed. 1982); 6 R. Cooley, Law of Insurance 5341 (2nd ed. 1928); J. & J. Appleman, supra; McHugh v. New England Mutual Life Insurance Co., 317 Mass. 498, 58 N.E.2d 843 (1945); Birss v. Order of United Commercial Travelers, 109 Neb. 226, 190 N.W. 486 (1922); Stuart v. Occidental Life Insurance Co., 156 Or. 522, 68 P.2d 1037 (1937). Smoke, soot and embers should not be classified as gas, especially in this type of exclusion. G. Couch, supra.
Death from inhalation of smoke by the victim of a factory fire is not clearly excluded as death resulting from suicide or from drugs, poisons, gases or fumes. Therefore, the policy at best is subject to two reasonable interpretations, and the one favoring coverage must be accepted. The insurer must prove suicide in order to avail itself of the exclusion.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
It is evident that the exclusion of death by inhalation of fumes includes the inhalation of smoke. Webster's New Collegiate Dictionary, Merriam-Webster (1979), defines fume as "a smoke, vapor, or gas, esp. when irritating or offensive." Likewise, Webster's New International Dictionary, 2d Ed., Unabridged (1955), defines fume as "1. Smoke."
NOTES
[1] The Equitable Life Assurance Society of the United States.
[2] For death resulting from "any drug, poison, gas or fumes, voluntarily or involuntarily taken, administered, absorbed or inhaled, except for an occupational accident resulting from a hazard incidental to the Insured's occupation."
[3] Defendants cites Schonberg v. New York Life Insurance Company, 235 La. 461, 104 So.2d 171 (1958) to support a brief argument that the death was not accidental because the insured was engaged in intentional and illegal activity which resulted in his loss of life. However, Schonberg does not support this proposition. It holds that recovery can be allowed for an accidental death even if it results from a voluntary act. Schonberg repudiates the idea that both the means and the result must be accidental. The test is whether the average man would regard the loss as unforeseen, unexpected and extraordinary. Roy's death, as discussed later, meets this test.
[4] Capital Bank & Trust Company.
[5] Exhibit J-6.
[6] 533 So.2d 343 (La.1988).
[7] LSA-C.C. art. 2056 provides:

In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
[8] LSA-C.C. art. 2047 states:

The words of a contract must be given their generally prevailing meaning.
Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.
[9] Webster's Third New International Dictionary 920 (1976).
[10] The interest demanded in plaintiff's petition is "from date of judicial demand," but interest is due from the date of payment provided by the policies.
[1] Smoke is made visible by the presence of small particles of carbon. When smoke is a product of incomplete burning, it finally settles as soot. Webster's Third New International Dictionary (1971).