CARRIE A. BIRSS, APPELLANT, V. ORDER OF UNITED COM-
MERCIAL TRAVELERS OF AMERICA, APPELLEE.

FILED NOVEMBER 13, 1922. No. 22108.

1. Insurance: PLEADING. As to an insurance policy, exempting from
   its provisions death resulting from "inhaling of gas," the alle-
   gation in the petition that the insured was "suffocated by cer-
   tain poisonous, irritating, noxious and injurious fumes and
   odors," arising from oil which had been obtained from an oil
   well and which had been stored in tanks, was sufficient to show
   that the insured was suffocated by a "gas," within the meaning
   of the term as used in the policy.

2. ———: POLICY: "GAS." The term "gas," as used in the policy,
   must be accepted in its common and ordinary meaning, and
   would cover any substance in the aeriform state having noxious
   or poisonous qualities, as perhaps distinguished from smoke or
   dust, which is matter in the solid state finely diffused through
   the air.

3. ———: ———: EXEMPTION. Where the insured, through acci-
   dentally inhaling gas arising from an oil tank, dies, held that
   the death loss was one which came within the exemption in
   the policy providing that the company should not be liable where
   death resulted from "inhaling of gas * * * (voluntary or invol-
   untary, conscious or unconscious)."

APPEAL from the district court for Douglas county:
WILLIAM A. REDICK, JUDGE. Affirmed.

Baldrige & Saxton, for appellant.

John A. Millener and Nolan & Woodland, contra.

Heard before MORRISSEY, C. J., ALDRICH, DAY and
FLANSBURG, JJ., SHEPHERD, District Judge.

FLANSBURG, J.

This was an action by the plaintiff, as beneficiary un-
der an insurance policy, issued upon the life of her hus-
band by the defendant insurance company. The defend-
ant demurred to the petition. The demurrer was sus-
tained and, the plaintiff having elected to stand upon
her petition, judgment was entered against her and her

suit dismissed.   From this judgment she has appealed.

So far as the questions raised here are concerned, the petition sets forth that the insured, Frank J. Birss, "while in the act of examining the flow of an oil well and in attempting to measure the amount of oil in several tanks with a long stick or rake handle, kneeled down inserting his head and arms into the opening of the cover of an oil tank from which the cap had been removed, and then and there was accidentally overcome, bruised, wounded and suffocated by certain poisonous, irritating, noxious and injurious fumes and odors, which arose from said oil and surrounded, engulfed and overcame the said Frank J. Birss.   As the direct result whereof the said Frank J. Birss immediately became very sick and ill and his lips became blue and his face colorless and an inflammation of his respiratory organs and of the mucous lining of his lungs was thereby produced, directly leading to and bringing on a congestion of same and pneumonia, and thereby inflicting upon him personal injuries and death by external, violent and accidental means."

A copy of the policy sued on is attached to the petition, and in the policy appears the following exemption: "Benefits * * * shall not cover * * * any death * * * resulting from * * * inhaling of gas or asphyxiation (voluntary or involuntary, conscious or unconscious)."

It is the defendant's contention, as the insured is shown to have died as a result of the inhalation of gas, that the death loss falls within the express exemption provision of the policy, and that the company is not liable.

In answer to this, the plaintiff urges that the petition does not disclose that the insured inhaled gas, the only allegation being that he inhaled certain fumes and odors arising from the oil stored in the tank.

The term "gas" is, in a sense, a generic term and is broad and sweeping in its meaning.   In Webster's Unabridged Dictionary it is defined as "an aeriform fluid;

a term used at first by chemists as synonymous with *air*, but since restricted to fluids supposed to be permanently elastic, as oxygen, hydrogen, etc., in distinction from vapors, as steam, which become liquid on a reduction of temperature. In present usage, since all of the supposed permanent gases have been liquefied by cold and pressure, the term has resumed nearly its original significa· tion, and is applied to any substance in the elastic or aeriform state."

We must accept the term according to its common and ordinary meaning. Should we try to limit the meaning in such a way as to distinguish gas from all fumes and vapors, it would be necessary to arrive at some restricted definition which we do not find in common usage, and one which apparently has not been employed in the policy. Matter in the aeriform state, having noxious or poisonous qualities, as perhaps distinguished from smoke or dust, which is matter in the solid state finely diffused through the air, is a gas within what, we believe, was intended by the term in the policy. The description in the petition of poisonous, noxious and injurious fumes and odors, arising from oil in an oil tank, to our minds describes what, in common understanding, would be a gas. The allegations in the petition are therefore sufficient, to that extent, to bring the case within the exemption clause.

The plaintiff has laid considerable stress upon the meaning of the word "inhale" and contends that the phrase "inhaling of gas" means only the *voluntary* inhaling of gas. It is true that, as to provisions using the term "inhale," the term, when not qualified by other words, has been defined to mean the *voluntary* inhalation of gas, and the provisions interpreted as exemptions, which, in effect, protect the company only against losses growing out of suicides. *Paul v. Travelers Ins. Co.*, 112 N. Y. 472, 3 L. R. A. 443; *Pickett v. Pacific Mutual Life Ins. Co.*, 144 Pa. St. 79, 13 L. R. A. 661; *Menneiley v.*

*Employers' Liability Assurance Corp.*, 148 N. Y. 596, 31 L. R. A. 686.

Some of the decisions have gone even further, and to an extent which does not appear to us justified, and have held that only the *voluntary* inhalation of gas fell within the exemption, though the exemption clause was so worded that a loss should not be covered which resulted from "anything accidentally or otherwise * * * inhaled," or which resulted "wholly or partly, directly or indirectly * * * from any gas or vapor." *Fidelity & Casualty Co. v. Waterman,* 161 Ill. 632, 32 L. R. A. 654; *Fidelity & Casualty Co. v. Lowenstein,* 97 Fed. 17, 46 L. R. A. 450; *Travelers Ins. Co. v. Ayers,* 217 Ill. 390, 2 L. R. A. n. s. 168.

The wording of the exception in the case here is, however, far broader and more sweeping than in any of those cases. Here the term "inhale" cannot be restricted to mean only the voluntary inhalation of gas, for any inhalation of gas, "voluntary or involuntary, conscious or unconscious," is expressly brought by the terms of the policy within the exception. The provision appears to us to be so plain as not to be open to construction. *Minner v. Great Western Accident Ass'n,* 99 Kan. 575, L. R. A. 1917D, 738; *Porter v. Preferred Accident Ins. Co.,* 95 N. Y. Supp. 682; *Jones v. Hawkeye Commercial Men's Ass'n,* 184 Ia. 1299.

Under the terms of the policy we are unable to see but that the insured in this case died as a result of the inhalation of gases which, though accidental, must have been either voluntary or involuntary, conscious or unconscious, and therefore within the express exception of the policy.

The judgment of the lower court is therefore

AFFIRMED.