NAOMA LAMAR, Appellant, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellee.

No. 41965.

JUNE 20, 1933.

Maxwell & Ryan, James B. Ryan, Ronald L. Ryan, and Lehan T. Ryan, for appellant.

Parsons & Mills and Volney Diltz, for appellee.

**372**

KINDIG, C. J.—The defendant-appellee, the Iowa State Traveling Men's Association, is an insurance company with its principal place of business at Des Moines.

On May 19, 1931, two accident insurance policies were issued by the appellee to Kirby Lamar. Lamar, at the time, was an attorney engaged in the practice of law at Houston, Missouri. Thereafter, on January 4, 1932, while the insurance policies were in full force and effect, the insured was found dead in a garage. When Mrs. Lamar found her husband, the insured, dead, the doors to the garage were almost closed and the engine in his automobile was running. Before his death, the insured had experienced difficulty in starting the engine in his car. Under the entire record, it is evident beyond peradventure of doubt that the assured was killed by the fumes coming from the exhaust pipe of his automobile.

After the insured's death, his wife, Naoma Lamar, the plaintiff-appellant, as the beneficiary in the insurance policies, asked the appellee for the payment of the $10,000 benefits named in the contracts. In response to that request, the insurance company offered to pay $1,000, but denied liability on the remaining $9,000 named in the policies. The basis for denying full liability is predicated by the appellee upon the clause in the insurance policies relieving the appellee from liability when death is caused by gas.

Section 2, Article VII, of the policy provides:

"Whenever a member in good standing of this association (the appellee company) shall, through external violent and accidental means, receive bodily injuries which shall, independently and exclusively of all other causes result, within ninety days, in the death of the member * * * shall in lieu of weekly indemnity in these by-laws provided, be indemnified in the sum of the amounts hereinafter provided (but in no event shall the total indemnity exceed $5,000.00 * * * )."

There is contained in each policy a limitation upon the liability of the appellee under the contract. This limitation, known as section 5 (a) of Article VII, is as follows:

"The association (the appellee company) shall not be liable for death, disability or loss in excess of 1/10 of the amounts in these by-laws provided for indemnity for any injury arising from or effected or aggravated by any of the following causes, condi-

tions or acts, or the results therefrom, to-wit: * * * When the member consciously or unconsciously, voluntarily or involuntarily, accidentally or otherwise, takes, *inhales* or absorbs any poison, *gas*, local or general anaesthetic." (Italics are ours.)

As before indicated, the appellee concedes its liability for one-tenth of the total amount named in the policies, to wit, $1,000, but denies responsibility for the remaining $9,000. No responsibility arises for the $9,000, the appellee declares, because the insured was killed by inhaling gas. On the other hand, the appellant insists that the appellee is liable to her for the entire $10,000 because the insured was not killed by inhaling gas, as contemplated by the insurance contracts. That conclusion is reached by the appellant on the theory that the exhaust from an automobile is not a gas, but a combination and collection of gases.

The appellant's theory is supported by the testimony of a doctor and a chemist. Two witnesses also testified for the appellee, one a doctor and the other a chemist. These expert witnesses do not materially disagree in their testimony. Appellee's witnesses declared that the insured's death was caused by carbon monoxide gas, while the appellant's witnesses were inclined to the view that the insured's death resulted from a collection or combination of gases, including carbon monoxide gas. Therefore, it is concluded by the appellant that her case should be submitted to the jury on the conflict of the expert testimony, under the theory that the exception in the insurance contracts contemplates a single gas, as distinguished from a collection or combination of gases.

We cannot adopt this theory as the correct one in determining the present appeal. As said by the Supreme Court of the United States, in Imperial Fire Insurance Co. v. Coös County, 151 U. S. 452, 14 S. Ct. 379, 381, 38 L. Ed. 231:

" * * * The rule is * * * well settled that contracts of insurance, like all other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense."

To the same effect see Birss v. Order of United Commercial Travelers of America, 109 Neb. 226, 190 N. W. 486; Kingsley v. American Central Life Insurance Co., 259 Mich. 53, 242 N. W. 836; Ashley v. Agricultural Life Insurance Company of America,

241 Mich. 441, 217 N. W. 27, 58 A. L. R. 1208; Standard Life ·& Accident Company of Detroit, Michigan, v. McNulty, 157 F. 224 (C. C. C.. Eighth Circuit); Jones v. Hawkeye Commercial Men's Association, 184 Iowa 1299, 168 N. W. 305, 11 A. L. R. 380.

At least this is true unless the parties clearly indicated their intention to define a word according to its technical or peculiar meaning. as distinguished from its ordinary and popular sense. So far as the contract under consideration is concerned, there is no ambiguity about the meaning of the word "gas". It was employed by the parties when executing the contract, as suggested by the foregoing authorities, in its plain, ordinary, and popular sense. There is nothing in the contract to suggest that the parties intended to use the word in its scientific, technical, or extraordinary sense. Some authorities are cited by the appellant to indicate that the word "gas" is to be defined according to its commercial sense. Obviously, however, the parties, when contracting in the case at bar, thought of gas in its ordinary and popular sense. Hence, it is essential to find the ordinary and popular definition for gas. Such definition may be found in Birss v. Order of United Commercial Travelers of America (109 Neb. 226, 190 N. W. 486), supra, reading on page 487):

"The term 'gas' is, in a sense, a generic term and is broad and sweeping in its meaning. In Webster's Unabridged Dictionary it is defined as 'an aeriform fluid; a term used at first by chemists as synonymous with air, but since restricted to fluids supposed to be permanently elastic, as oxygen, hydrogen, etc., in distinction from vapors, as steam, which becomes liquid on a reduction of temperature. In present usage, since all of the supposed permanent gases have been liquefied by cold and pressure, the term has resumed nearly its original signification, and is applied to any substance in the elastic or aeriform state.' "

In Birss v. Order of United Commercial Travelers of America (109 Neb. 226, 190 N. W. 486, 487), supra, the facts were that Frank J. Birss

"while in the act of examining the flow of an oil well and in attempting to measure the amount of oil in several tanks with a long stick or rake handle, kneeled down inserting his head and arms into the opening of the cover of an oil tank from which the cap had been removed, and then and there was accidentally overcome,

bruised, wounded, and suffocated by certain poisonous, irritating, noxious and injurious fumes and odors, which arose from said oil and surrounded, engulfed, and overcame the said Frank J. Birss."

The point involved in the case before the Nebraska Supreme Court was whether the odors and fumes constituted gas within the exception in the insurance policy. When deciding that question, the Nebraska Supreme Court said, reading on page 488 of the North-western Reporter:

"Under the terms of the policy we are unable to see but that the insured in this case died as a result of the inhalation of gases which, though accidental, must have been either voluntary or in-voluntary, conscious or unconscious, and therefore within the express exception of the policy."

A fair definition of the word "gas", as contemplated by the parties to the contract under consideration, is that contained in Web-ster's Dictionary, as set forth in the case of Birss v. Order of United Commercial Travelers of America (109 Neb. 226, 190 N. W. 486), supra. Any other definition would be strained and uncontemplated. Even the doctor and chemist testifying for the appellant in the case at bar concede that the insured was killed by gases coming from the automobile exhaust. These experts, however, theorize that death was not caused by a single gas, but rather by a collection or combination of gases. There is no provision in the insurance con-tract declaring that the exception shall apply only when death arises from the inhalation of a single gas. No purpose can be imagined for limiting the exception to a single gas. So far as this record reveals, a combination of gases would be just as deadly as, if not more so, than a single gas. The ordinary and popular definition of gas would include a combination or collection of gases as well as a single gas.

Mr. Justice Cardozo said in Lewis v. Ocean Acc. & G. Corp., 224 N. Y. 18, 120 N. E. 56, 57, 7 A. L. R. 1129:

"To the scientist who traces the origin of disease there may seem to be no accident in all this. * * * But our point of view in fixing the meaning of this contract must not be that of the scien-tist. It must be that of the average man. * * * This test—the one that is applied in the common speech of men—is also the test to be applied by courts."

Manifestly the average man in common and popular speech would understand "gas" to be a collection or combination of gases as well as a single gas. Therefore, the combination of gases in the case at bar constitutes gas under the exception in the insurance contract under consideration. This is true even when taking into consideration the principle of *noscitur a sociis*, as well as other theories propounded by the appellant. It is true, of course, that the burden to establish the exception must be borne by the appellee. Carpenter v. Iowa State Traveling Men's Association, 213 Iowa 1001, 240 N. W. 639. Nevertheless, under the facts and circumstances of this case, the appellee has met the requirement beyond any dispute. Consequently there is no issue of fact to be passed upon by the jury. The doctors testifying for the appellant, as well as those testifying for the appellee, declared that the insured was killed by gas. Although the appellant's witnesses said that death was caused by a combination of gases, the appellee's witnesses stated that a single gas killed the insured. Regardless of this difference of theory, the death of the insured was under the exception contemplated by the policy, because the insured died as the result of inhaling gas, as the same is defined in its popular and ordinary sense. So, under the circumstances, the appellant is entitled to the $1,000 tendered by the appellee, but cannot recover the remaining $9,000 claimed by her.

Wherefore, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

EVANS, STEVENS, ALBERT, DONEGAN, and CLAUSSEN, JJ., concur.