### FISCHER v. EXCESS INS. CO. OF AMERICA.
### No. 11768.

Circuit Court of Appeals, Eighth Circuit.

Nov. 16, 1940.

WOODROUGH, Circuit Judge, dissenting.

———◆———

Francis J. Mullen, of Fort Dodge, Iowa (Frank Maher and John M. Schaupp, both of Fort Dodge, Iowa, on the brief), for appellant.

B. B. Burnquist, of Fort Dodge, Iowa, for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment dismissing the complaint in an action brought by the appellant to recover $14,500 alleged to be due from the appellee under a contract of reinsurance wherein the Standard Mutual Automobile Association of Council Bluffs, Iowa, was the reinsured, the appellee was the reinsurer, and the reinsurance was granted with respect to third party automobile public liability policies issued by the reinsured. The complaint set forth the contract sued upon; the insolvency of the reinsured; the appointment of the receiver; the allowance in the receivership of three claims, two for $10,000 each and one for $3,500, the claims being based upon three third party public liability policies issued by the reinsured and covered by the contract of reinsurance; the insufficiency of the assets of the reinsured to pay more than 25 per cent. of these claims; and a demand for $14,500 ($7,000—$7,000—$500) which it is asserted the contract of reinsurance obligated the reinsurer to pay.

The reinsurer moved to dismiss the complaint upon the ground that the contract of reinsurance showed that the reinsurer was not liable to the reinsured, because the reinsured had not paid, and could not pay, $3,000 upon any claim under any of the reinsured policies; that the contract sued upon covered losses actually paid by the reinsured in excess of $3,000 under each of its reinsured policies, and did not cover liability incurred by the reinsured under such policies; and that therefore the complaint failed to state a claim upon which relief could be granted. The court below sustained the motion, being of the opinion that the reinsurance contract covered excess losses paid under each of the reinsured policies, and did not cover excess liability incurred by the reinsured thereunder.

The contract in suit is entitled "Third Party Automobile Public Liability Reinsurance Contract." The language of the contract which defines its coverage is as follows:

"In consideration of the payment of a Deposit Premium of One Hundred Fifty And 00/100 Dollars ($150.00) and of the premium hereinafter provided and the mutual covenants and agreements hereinafter contained, and upon the terms and conditions hereinbelow set forth, the parties hereto do hereby agree as follows:

"Section I. The Reinsurer agrees to reinsure the Company [Standard Mutual Automobile Association of Council Bluffs, Iowa] as respects all Third Party Automobile Public Liability policies, except those hereinafter excluded, becoming effective while this Contract is in force and agrees to repay any amounts of ultimate net loss which the Company may pay in excess of the first Three Thousand Dollars ($3,000) on account of any one person injured or killed in any one accident and the first Three Thousand Dollars ($3,000) on account of more than one person injured or killed in any one accident; but the liability of the Reinsurer shall in no event exceed Twenty-two Thousand Dollars ($22,000) on account of one person injured or killed in any one accident nor Forty-seven Thousand Dollars ($47,000) for two or more persons injured or killed in any one accident.

"Section II. The term 'ultimate net loss' shall be understood to mean and shall mean the sum actually paid in cash in settlement of losses for which the Company is liable, after making proper deductions for all recoveries, salvages and other reinsurances or insurances, and shall exclude all expenses for salaried employees incurred in investigation, adjustment and litigation. Other loss and legal expenses, including court costs, incurred with the consent of the Reinsurer shall be apportioned in proportion to the respective interests as finally determined.

"Section III. The liability of the Reinsurer shall commence simultaneously with that of the Company and shall be subject in all respects to all the general and specific stipulations, clauses, waivers and modifications of the original policy or other undertaking and any endorsements or riders thereon."

The appellant contends that the court below misconstrued the language and meaning of the contract and failed to appreciate that the reinsurer not only agreed to indemnify the reinsured against excess loss under its policies, but undertook to reinsure its liability as well. It is argued

that when the language of the contract is read in the light of the decisions in Allemannia Fire Insurance Co. v. Firemen's Insurance Co., 209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948, and Globe National Fire Insurance Co. v. American Bonding & Casualty Co., 198 Iowa 1072, 195 N.W. 728, 200 N.W. 737, 35 A.L.R. 1341, it is apparent that the contract sued upon is one which covered liability incurred by the reinsured under the policies affected by the reinsurance. There is language in the cases relied upon by appellant which lends color to his contention, but the contracts involved in those cases differed from the contract in suit here, and it is apparent that the ruling in each of those cases was greatly influenced by circumstances.

In the Allemannia case (209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948) the contract was, in the main, one of ordinary reinsurance issued to a company which became insolvent as the result of the Great Baltimore fire of 1904. The Supreme Court in that case was of the opinion that the provisions of the reinsurance contract which, it was contended, required the reinsured to pay losses in order to compel contribution by the reinsurer, were not intended to have, and should not be given, the effect of making payment by the reinsured a condition precedent to the liability of the reinsurer.

In the Globe case (198 Iowa 1072, 195 N.W. 728, 200 N.W. 737, 35 A.L.R. 1341) a depositor, in order to insure repayment of its deposit in an Iowa bank, obtained surety bonds from a bonding company upon the oral understanding that that company would procure its bonds to be reinsured for the additional protection of the depositor. Both the bank and the bonding company became insolvent. The receiver for the bonding company, for the benefit of the depositor, joined the depositor in a suit against the reinsurers. The reinsurance contracts there involved disclosed obligation of the bonding company to the depositor and the purpose for which the bonds were issued. While the reinsurance contracts, upon their face, covered loss under the bonds, the Supreme Court of Iowa ruled that, under the issues and circumstances of the case presented, the receiver of the reinsured could recover from the reinsurers, for the benefit of the depositor, without prepayment of the loss. It is apparent that the vital question in that case was whether the receiver could maintain an action against the reinsurers for the benefit of the depositor, which was not formally a party to the contract of reinsurance and was not in privity with the reinsurers.

The recent case of Fidelity & Deposit Co. v. Pink, 302 U.S. 224, 58 S.Ct. 162, 82 L.Ed. 213, precludes our giving to the Allemannia case the broad significance claimed for it by appellant. In the Pink case, a contract of reinsurance was accorded the meaning of the language used by the parties to it and was held to provide reinsurance against losses actually paid by the reinsured. The Supreme Court said (page 228 of 302 U.S., page 164 of 58 S.Ct. 82 L.Ed. 213):

"Respondent maintains that proof of payment is not a prerequisite to recovery.

"Both courts below thought that Allemannia Insurance Co. v. Firemen's Insurance Co., 209 U.S. 326, 28 S.Ct. 544, 52 L. Ed. 815, 14 Ann.Cas. 948 (1908), required approval of respondent's contention. This was error. The defense was well taken and should have been sustained.

"We do not question the general rules concerning liability of reinsurers announced in the Allemannia Case; but the liability under any written contract must be determined upon consideration of the words employed, read in the light of attending circumstances.

"Here the two insurance companies stood upon an equal footing; both were experts in the field. The language used differs materially from that found in the policy of the Allemannia Company. There is no ambiguity and no circumstance requires disregard of the ordinary meaning of the language."

And (on page 230 of 302 U.S., on page 164 of 58 S.Ct., 82 L.Ed. 213): "As the standard form of 1930 was adopted twenty years after the Allemannia Case it fairly may be assumed that the dissimilar language employed was intended to impose liability different from the one there found to exist."

It is true, of course, that the Pink case is not controlling on a question of Iowa law, but it involves nothing but the application of a rule universally recognized, namely, that "liability under any written contract must be determined upon consideration of the words employed, read in the light of attending circumstances." Fidelity & Deposit Co. v. Pink, page 229

of 302 U.S. page 164 of 58 S.Ct., 82 L. E. 213.[1] The application of this rule led the Supreme Court of Ohio to hold that a reinsurance contract issued by the reinsurer here involved and containing language identical with that of the contract in suit, covered excess losses actually paid, and not excess liability incurred. Stickel v. Excess Insurance Co. of America, 136 Ohio St. 49, 23 N.E.2d 839.

It seems clear that, under the language of the contract here in suit, giving it a reasonable and sensible construction, the reinsured bought protection against actual loss in excess of $3,000 paid by it under any of its policies covered by the reinsurance contract, and that the contract contains no promise by the reinsurer to assume liability incurred by the reinsured under its policies. Legally this contract concerned no one except the parties to it. They were free to contract as they wished with respect to reinsurance. If, because of accident or mistake, the contract, as written, incorrectly set forth the agreement of the parties, it should have been reformed. In the absence of statutory restrictions, we know of no reason why the parties to reinsurance contracts may not condition them as they see fit. The argument that some of the provisions of the contract are inconsistent with the meaning attributed to its language by the court below, and that an agreement of the reinsurer to assume liability both for losses paid and for liability incurred under the reinsured policies can be spelled out, we regard as without substantial merit.

The judgment is affirmed.

WOODROUGH, Circuit Judge (dissenting).

I think that the undertaking of the policy sued on in this case expressed in the words, "The reinsurer agrees to reinsure the Company as respects all third party automobile public liability policies * * * becoming effective while this contract is in force", and in the words "The liability of the reinsurer shall commence simultaneously with that of the Company", indelibly stamps the contract an insurance contract and differentiates it from a mere contract for recoupment of moneys that might be actually paid out by the 'Company'. The other agreements in the policy as to notice and the ascertainment and limitation of amounts to be paid and as to the time and manner of making payment of such amounts, should all be deemed subordinate to, and should be reconciled with, the expressed intent and fully paid for legal obligation to insure—or reinsure, which is basically the same thing.

The wording of the policy is not the same wording which turned the decision of the Supreme Court in the Pink case (302 U.S. 224, 58 S.Ct. 162, 82 L.Ed. 213). There the reinsuring company "reinsured against loss" instead of reinsuring, like in this case, "as respects—all liability policies." This policy is more like one insuring a man in respect to a fire occurring in his house. But whether there is analogy to the Pink case or not, the law of Iowa controls and the majority opinion seems to me to be contrary to Iowa law as declared in the decision by the Supreme Court of that state in Globe National Fire Insurance Co. v. American Bonding & Casualty Co., 198 Iowa 1072, 195 N.W. 728, 729, 200 N.W. 737, 35 A.L.R. 1341. In that suit upon a reinsurance contract by the receiver of an insolvent reinsured, the court said, "The right of the receiver to recover is challenged upon the ground that the insolvent surety has discharged no part of its liability upon the bond executed for the benefit of the appellee, and that, as it has suffered no loss, no recovery can be had in the name of the receiver. The contrary appears to be the well-settled rule. * * * Gantt v. American Central Insurance Co., 68 Mo. 503; Allemannia Fire Ins. Co. v. Firemen's Ins. Co., 209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948; French Mut. General Soc. v. United States F. & G. Co. (D.C.) 203 F. 558; Joyce on Insurance, § 132 et seq.; vol. 1 (2d Ed.); Mutual Safety Ins. Co. v. Hone, 2 N.Y. 235; Philadelphia Trust, etc., Co. v. Fame Ins. Co., 9 Phila. [Pa.]

---

[1] See and compare: Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693; Travelers Ins. Co. v. Springfield Fire & Marine Ins. Co., 8 Cir., 89 F.2d 757, 763; Terry v. New York Life Ins. Co., 8 Cir., 104 F.2d 498, 504; Lincoln National Life Ins. Co. v. Ghio, 8 Cir., 111 F.2d 307, 310; Lamar v. Iowa State Traveling Men's Ass'n, 216 Iowa 371, 249 N.W. 149, 150, 92 A.L.R. 159; Zeigler v. Equitable Life Assur. Soc., 219 Iowa 872, 259 N.W. 769, 770; Kantor v. New York Life Ins. Co., 219 Iowa 1005, 258 N.W. 759, 760; Wilson v. Equitable Life Ins. Co., 220 Iowa 321, 262 N.W. 525, 527.

292; Blackstone v. Alemannia Fire Ins. Co., 56 N.Y. 104; Eagle Ins. Co. v. Lafayette Ins. Co., 9 Ind. 443."[2] The Iowa court applied the "well-settled rule" and sustained the judgment awarding recovery to the receiver of the insolvent reinsured against the reinsurer notwithstanding the fact that the insolvent had discharged no part of its liability on its bond.

The court recognized that policies might be so worded that a different result would follow and instanced contracts which indemnified "only against 'a loss actually sustained and paid in satisfaction of a judgment after the trial of the issue'". But the plain intendment of the decision is that under a policy which reinsures, like the one here in suit, "as respects—all public liability policies—becoming effective while the contract is in force", the receiver of the insolvent reinsured may recover whether insolvency has prevented it from paying its losses or not.

It is true the Iowa decision conflicts with decision in the Pink case. The identical wording passed on in both cases was "does hereby reinsure—against loss." One decision denies recovery because the loss was never actually paid by the reinsured, and the other awards recovery notwithstanding that fact. Neither policy contained any express provision that the reinsurance should lapse upon the reinsured's becoming insolvent. Wherever that result of in effect lapsing the policy has been arrived at it is through judicial interpretation and I think a different guide to interpretation has been followed in the respective cases. One course is to determine whether the contract is one of insurance, and if it is, then to apply insurance law to it. The fundamental of that law being to let paid for insurance live rather than perish. The other way is to deduce the true intention of the parties to the contract by a priori determination of the meaning of the words used. I feel that we are firmly bound to follow and apply the Iowa law which ascribes certain consequences to contracting for reinsurance and sustains liability of the reinsurer and that the judgment herein should be reversed. The question presented seems to me one of general importance.

[2] Quotations as follows are taken from the cases cited and relied on by the Iowa court in addition to Allemannia Fire Ins. Co. v. Firemen's Ins. Co., 209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann. Cas. 948; Gantt v. American Central Ins. Co., 68 Mo. 503. "An insurer whose risk is re-insured, is not obliged, in order to maintain his action against his re-insurer, to show that he has paid the loss." French Mut. General Soc. v. United States F. & G. Co., D.C., 203 F. 558, loc. cit. 566, "The authorities, however, are clear that an insurer may recover from a reinsurer before the former has actually paid the insured." Blackstone v. Alemannia Fire Ins. Co., 56 N.Y. 104, (2 syl.), "Under a contract of re-insurance the extent of the liability of the re-insurer is not affected by the insolvency of the re-assured." Eagle Ins. Co. v. Lafayette Ins. Co., 9 Ind. 443, " * * * it is not necessary for the reassured to pay the loss to the first assured before proceeding against the reinsurer".