**M. Diane KOKEN, Insurance Commissioner of the Commonwealth of Pennsylvania, Plaintiff**

v.

**RELIANCE INSURANCE COMPANY, Defendant.**

**In re Baptist Health South Florida, Inc. objection to the Liquidator's denial of a direct payment request; Palm Springs General Hospital objection to the Liquidator's denial of a direct payment request; the Exceptions to the Report of Referee James Schwartzman.**

Commonwealth Court of Pennsylvania.

March 18, 2004.

Publication Ordered April 5, 2004.

Deborah F. Cohen, Eric Rothschild and Kassem L. Lucas, Philadelphia, for plaintiff.

Daryn E. Rush, Philadelphia, for Baptist Health South Florida, Inc. and Palm Springs General Hospital.

### OPINION and ORDER

The Court has reviewed the report of the Referee entered in "The Objection of Palm Springs General Hospital" and "The Objection of Baptist Health South Florida Hospital" to the Liquidator's denial of a direct payment request. Before the Court for consideration are the exceptions filed by Palm Springs General Hospital and Baptist Health South Florida Hospital to the Referee's recommendation. The Liquidator has filed a response to the exceptions requesting that this Court adopt the findings of the Referee. Further, the Liquidator did not contest the factual findings of the referee. Accordingly, the Court adopts the following findings made by Referee Schwartzman.

### FINDINGS OF FACT

1. Palm Springs General Hospital (Objector Palm Springs) was insured by Reliance Insurance Company (Reliance).

2. Baptist Health South Florida Hospital (Objector Baptist) was insured by Reliance Insurance Company (Reliance).

3. The Insurance Commissioner of Pennsylvania, acting as Statutory Liquidator for Reliance Insurance Company (Liquidator), has filed with the Commonwealth Court a petition seeking approval of guidelines for the direct payment of reinsurance proceeds (Guidelines).

4. No objections to the Guidelines have been filed by reinsurance companies.

5. Reliance Insurance Company of Illinois issued a contract of insurance to Palm Springs General Hospital, located in Florida; Reliance reinsured 100% of the risk with American Healthcare Indemnity Company (AHIC).

6. Reliance Insurance Company of Illinois issued a contract of insurance to Baptist Health South Florida Hospital, located in Florida; Reliance reinsured 100% of the risk with American Healthcare Indemnity Company (AHIC).

7. Reliance issued reinsurance certificates to, and entered into reinsurance agreements with, AHIC. AHIC is a subsidiary of Southern California Physician's Insurance Exchange (SCPIE).

8. The business covered by the reinsurance agreements were policies written through the Health Care Division of Reliance, and SCPIE Management Services, Inc., acted as program manager.

9. The policies written by Reliance were 100% reinsured by AHIC, and Reliance was required to pay 100% of the premiums it received to AHIC, less a 5% ceding commission.

10. The reinsurance agreement between Reliance and Southern California Physician's Insurance Exchange does not contain a written "cut-through" clause al-

lowing for the direct payment of reinsurance proceeds to an insured.

12. Objector Baptist and Objector South Florida obtained professional liability insurance through a program of reinsurance that was marketed and administered by SCPIE.

13. Objector Baptist and Objector South Florida dealt only with SCPIE, which managed all aspects of the reinsurance program.

14. The reinsurance agreements at issue here are between Reliance and AHIC and provide that, in the event of the insolvency of Reliance the proceeds of the reinsurance would be paid directly to Reliance, its liquidator, or other listed person.

15. Reliance was placed into liquidation by order of this Court dated October 3, 2001.

16. The Liquidator developed Guidelines for Enforcement of 40 P.S. § 221.34, which set forth the procedures by which a reinsurer or an individual insured could apply for a direct payment of reinsurance proceeds.

17. Under the Guidelines, the Liquidator will make direct payment of reinsurance proceeds only where a reinsurance agreement contains a provision for direct payment of proceeds to an insured or where the reinsurer, with the consent of the direct insured, has assumed the policy obligations of the fronting company.

18. In November 2001, SCPIE submitted to the Liquidator a request for novation of AHIC's reinsurance agreements with Reliance, pursuant to which AHIC would assume direct liability for the Objectors for their insurance claims.

19. Applying the Guidelines, the Liquidator found that the reinsurance agreements failed to identify the insured who was to receive direct payment, that the reinsurer had not obtained the named insured's informed consent to the substitution of the reinsurer for Reliance in the coverage relationship, and that the reinsurer had not submitted documentary proof of its unequivocal assumption of Reliance's obligations to the insured.

20. SCPIE did not file objections to the denial of the request for novation.

20. The Objectors filed objections to the Liquidator's denial of novation.

21. The Objectors seek the direct payment of the proceeds of reinsurance, discovery of documents in addition to the reinsurance agreements between Reliance and AHIC, and a stay of proceedings until our Supreme Court renders a decision in *Koken v. Legion Insurance Co.*, 831 A.2d 1196 (Pa.Cmwlth.2003).

**The Court makes the additional findings of fact:**

22. Neither AHIC nor its subsidiary SCPIE have been joined to this action. 23. Neither AHIC nor its subsidiary SCPIE have participated in this action.

23. Neither AHIC nor its subsidiary SCPIE have participated in this action.

### DISCUSSION

Where an insurance company enters into a reinsurance agreement to reinsure certain of its business and that reinsurance agreement contains no cut-through clause of direct payment of reinsurance, the issue is whether the conduct of the parties can modify the reinsurance agreement or cause a novation of the written reinsurance agreement, so as to create a third-party beneficiary contract. In the matter *sub judice*, the Objectors seek to recover from the reinsurer on the theory that they are third-party beneficiaries under the reinsurance contract.

■ Understanding that reinsurance is a contract of indemnity and not liability, the focus is generally on the relationship between the primary insurer and the reinsurer. Those two parties are in contractual privity, and the terms of the contract cannot be ignored in determining the proper recipient of the proceeds. *See Fischer v. Excess Insurance Company of America,* 31 F.Supp. 651 (N.D.Iowa 1940), *aff'd,* 115 F.2d 755 (8th Cir.1940). Thus, where the primary insurer, i.e., the ceding company, becomes insolvent and may merely pay its own insured a fraction of the claim or, worse yet, nothing, the reinsurer is liable to pay the amount it would have paid had the ceding company not become insolvent. *Id.* However, the common practice is for reinsurance contracts to contain an "ultimate net loss" clause that defines "ultimate net loss" as the amount actually paid by the reinsured in the settlement of losses under its policies. *Id.* It has been held that there being no privity of contract between the reinsurer and the insured, the insured cannot maintain a direct action against a reinsurer of an insolvent insurer for costs of defense of a litigation that insurer was not contractually obligated to pay. *Eastern Engineering & Elevator Company v. American Re–Insurance Company,* 309 Pa.Super. 578, 455 A.2d 1235 (1983). Neither can a state guaranty fund recover directly from a reinsurer of an insolvent ceding company. *Excess and Cas. Reinsurance Association v. Insurance Commissioner,* 656 F.2d 491 (9th Cir. 1981). Nevertheless, that principle may be modified where the reinsurance contract has language that allows for a direct payment to the insured or where a novation has occurred. Furthermore, because contractual privity is not limited solely to instances of a writing, and words and conduct can give rise to a contractual relationship, that principle may also be modified by the conduct of the parties. Issue resolution is not promoted by limiting review to the contract of reinsurance between the primary insurer (Reliance) and the reinsurer. Instead, a totality of the circumstances analysis is necessary with consideration given to the tripartite nature of the relationship. There must be a determination as to whether there is a pass-through relationship between the parties or whether the primary insurer barred access to the reinsurer, or, whether there was even knowledge of the reinsurer. Further, consideration must be given to all the contractual writings between all the parties, which includes the reinsurance contract, and any other writings that are common to the all the parties. This is of particular importance since documents pertaining to the same transaction will be read together as one contract. *Koken v. Legion Insurance Company,* 831 A.2d 1196 (Pa.Cmwlth. 2003), *citing, Huegel v. Mifflin Construction Company, Inc.,* 796 A.2d 350, 354–55 (Pa.Super.2002); *International Milling Co. v. Hachmeister,* 380 Pa. 407, 110 A.2d 186, 190 (1955).

■ Herein, there is evidence of record that the reinsurer has requested to assume the direct liability of the original insured. There is also evidence that suggests that a familiar relationship existed between the three principals, i.e., the insured (Objectors herein), the primary insurer (Reliance herein), and the reinsurers (AHIC and SCPIE). It is suggested that the insureds, herein Objectors, had little or no contact with Reliance and seemingly exclusive contact with the reinsurer. These facts suggest that the conduct of the parties has worked a novation of the reinsurance agreement. Where an insured successfully establishes that the conduct of the parties has caused a novation of a contract of reinsurance, and the insured elects to seek recovery not from the primary insurer but from the reinsurer, the insured effectively releases the primary insurer of any/all liability that may have

resulted under the primary insurance contract, and the insured then stands in the shoes of the primary insurer and elects to accept as its exclusive remedy recovery under the reinsurance agreement.

Therefore, this Court concludes that:

1. Objector Palm Springs General Hospital and Reinsurer AHIC through their regular course of interaction with one another caused a novation of the reinsurance agreement between Reliance and AHIC.

2. Objector Baptist Health South Florida Hospital and Reinsurer AHIC through their regular course of interaction with one another caused a novation of the reinsurance agreement between Reliance and AHIC.

3. Direct access to reinsurance proceeds is permissible where there is a contractual provision providing for a direct payment obligation.

4. Direct access to reinsurance proceeds is permissible where the conduct of the insured, the primary insurer, and the reinsurer works a novation of the reinsurance agreement between the primary insurer and the reinsurer.

5. When an insured seeks to circumvent the primary insurer and seeks direct access to reinsurance proceeds, the insured causes a release of any and all claims it may have against the primary insurer.

Considering that the Liquidator disallowed a novation of the reinsurance agreement on the premise that certain prerequisites were not met, and the Objectors have advanced the position that the reinsurer continues to seek a novation, whether the prerequisites can and will be met was not adequately presented before the Referee. This Court concludes that no further discovery is necessary to determine whether the Objectors are entitled to direct payment under the reinsurance agreements themselves. This Court further concludes that the conduct of the parties has been such as to have caused a novation of the agreement, thereby allowing direct access to the reinsurance policy.

Finally, this Court concludes that where the insured and the reinsurer have caused a novation of the reinsurance contract, such as is the case here; any liability the primary insurer may have or does owe to the insured is discharged, and any and all liability the primary insurer may have had under the insurance contract is assumed by the reinsurer. Thus, herein, Objectors may have direct access to the reinsurance proceeds since the insured through its course of conduct caused a novation of the reinsurance agreement between Reliance and AHIC. Further, any and all insurance obligations existing between Reliance and Objector Palm Springs General Hospital and Reliance and Objector Baptist Health South Florida Hospital are assumed by the reinsurer, AHIC.

The Liquidator shall serve a copy of this order upon those listed on the master service list, and file an affidavit with the Court setting forth that service was made on or before March 31, 2004.

### ORDER

AND NOW, this 18th day of March 2004, the factual findings of Referee are adopted as set forth in the opinion filed this date. However, due to the Court's disagreement with the Referee's legal conclusions, detailed in the preceding opinion, the Court concludes that the objectors are entitled to direct access of the reinsurance proceeds; the Liquidator's motion to dismiss is DENIED.

/s/ James Gardner Colins
JAMES GARDNER COLINS, President Judge.