COMMUNITY UNIT SCHOOL DISTRICT 200, Plaintiff-Appellant, v. ILLINOIS INSURANCE GUARANTY FUND, Defendant-Appellee.

Second District No. 2—04—0915

Opinion filed July 6, 2005.

John A. Relias and Dana Fattore Crumley, both of Franczek Sullivan, P.C., of Chicago, for appellant.

Rowe W. Snider, Joseph A. Hinkhouse, and Sarah H. Dearing, all of Lord, Bissell & Brook, L.L.P., of Chicago, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

The General Assembly created the Illinois Insurance Guaranty Fund (the Fund) to assume the obligations of insolvent insurance companies. Community Unit School District No. 200 (the District) saw its workers' compensation insurer declared insolvent. It thereafter submitted three pending workers' compensation claims to the Fund for payment. The Fund declined coverage, citing a statutory provision

that an entity with a net worth of more than $25 million was not entitled to coverage. The District sued the Fund, claiming that it wrongfully refused to pay the claims. The trial court granted the Fund summary judgment, and the District appeals.

The District raises a number of distinct issues, but they can be summarized as follows: (1) the generic definition of net worth as assets minus liabilities is unworkable when applied to a public school district; and (2) the trial court erred in determining that the District's net worth exceeds $25 million. We disagree and affirm.

The District operates 22 facilities in the Wheaton-Warrenville area. As the School Code (105 ILCS 5/1—1 *et seq.* (West 2002)) requires, the District maintains a system of distinct funds, each designated for a particular purpose. Its two general funds are the Education Fund and the Operations and Maintenance Fund. As of December 31, 2000, the Education Fund had a balance of $20,320,139. The District also maintained a Working Cash Fund with a balance of about $9 million. The total of the District's funds was $54,774,951.

In 2001, the District obtained workers' compensation insurance through Reliance Insurance Company. On October 3, 2001, the Commonwealth Court of Pennsylvania ordered Reliance into liquidation. See *Argonaut Insurance Co. v. Safway Steel Products, Inc.*, 355 Ill. App. 3d 1, 6 (2004); see also *Koken v. Reliance Insurance Co.*, 846 A.2d 167 (Pa. Commw. Ct. 2004). At about this time, three workers' compensation claims were filed against the District. The parties apparently agree that the claims will eventually total about $100,000. The District submitted them to the Fund for payment.

The Fund initially rejected the claims because the District had not provided an affidavit of net worth. The District resubmitted the claims with a letter from its attorney stating its position that the $25 million net-worth provision did not apply to public entities. However, the District also submitted audited financial statements. Allen Schmelter, the Fund's controller, reviewed the financial statements and concluded that the District's net worth was $243,714,243. Accordingly, the Fund again rejected the District's claims.

The District then filed this action, seeking a declaration that the Fund had to provide coverage for the claims. During discovery, M. Bert Neuhring, an expert retained by the Fund, examined the district's financial statements and concluded that, as of December 31, 2000, the District's net worth was approximately $86 million. The District's expert, Timothy Cole, testified at a deposition that the "common, ordinary understanding of net worth was assets minus liabilities." Nevertheless, Cole opined that only the District's Education Fund should be considered in calculating the District's net worth, because

only that fund could be used for any purpose. Cole conceded that the District had full discretion to transfer money from the Working Cash Fund to the Education Fund, where it could be used for "any legal purpose." If the Working Cash Fund were added to the Education Fund, the District's discretionary funds alone would exceed the $25 million limit.

The parties thereafter filed cross-motions for summary judgment. The trial court granted the Fund's motion, finding that the District's net worth exceeded $25 million. The court observed that the legislature had made no provision for excluding "allocated funds" and that applying the net-worth limit here was consistent with the statutory purpose of preserving the Fund's assets for smaller entities, which most needed them. The District timely appealed.

Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002). We review *de novo* an order granting summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

A brief overview of the statute creating the Fund is necessary to understand the issues. The legislature created the Fund (215 ILCS 5/535 (West 2002)) to "provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, [and] to avoid financial loss to claimants of policyholders because of the entry of an Order of Liquidation" against an insolvent insurance company (215 ILCS 5/532 (West 2002)). The Fund's purposes are to protect the public from losses caused by insolvent insurance companies and to place claimants in the same position they would have been in had their insurance carriers not been declared insolvent. *Urban v. Loham*, 227 Ill. App. 3d 772, 775-76 (1992). The Fund is to pay covered claims that exist before the entry of an order of liquidation or that arise within 30 days thereafter. 215 ILCS 5/537.2 (West 2002). A covered claim is "an unpaid claim for a loss arising out of and within the coverage of an insurance policy" to which the statute applies and that is in force at the time of the occurrence giving rise to the claim. 215 ILCS 5/534.3(a) (West 2002). However, a covered claim does not include a claim against an insured whose net worth exceeded $25 million on December 31 of the year before the claim arose. The insured's net worth includes "the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis." 215 ILCS 5/534.3(b)(iv) (West 2002).

The statute does not define "net worth" or "aggregate net worth." As the Fund points out, when a statute does not define a term, we

should give the term its commonly understood meaning. *People ex rel. Foreman v. Estate of Kawa*, 152 Ill. App. 3d 792, 798 (1987). "Net worth" is commonly defined as "[a] measure of one's wealth, usu. calculated as the excess of total assets over total liabilities." Black's Law Dictionary 1062 (7th ed. 1999); see *Central Bank-Granite City v. Ziaee*, 188 Ill. App. 3d 936, 945 (1989), quoting Black's Law Dictionary 939 (5th ed. 1979) (" '[r]emainder after deduction of liabilities from assets' "); *Potter v. Potter*, 160 Ill. App. 3d 444, 452 (1987) (defining net worth as "total assets minus total liabilities"). The District insists, however, that this "simplistic" definition is unworkable when applied to a public school district. The District makes several related arguments in support of this contention.

The District first contends that the School Code (105 ILCS 5/1—1 *et seq.* (West 2002)) rigidly controls how the District manages its finances, requiring it to maintain separate funds to be used for limited purposes. See 105 ILCS 5/17—8 (West 2002) ("Any transportation operating costs incurred for transporting pupils to and from school and school sponsored activities and the costs of acquiring equipment shall be paid from a transportation fund ***"). The District contends that these statutory restrictions on the use of its funds mean that the funds should not be considered assets in calculating its net worth. Second, the District argues that other statutes and administrative regulations exclude certain encumbered funds from being defined as assets. The District argues that its specific funds are similarly encumbered and thus should not be counted as assets in determining its net worth. Finally, the District contends that "Illinois law and public policy" prevent considering as assets property that the District acquired through taxation.

The simple answer to all of these contentions is that the plain language of the statute simply does not support them. Our principal duty in construing a statute is to give effect to the legislature's intent. *Carroll v. Paddock*, 199 Ill. 2d 16, 22 (2002). The best evidence of this intent is the language of the statute itself, and that language must be given its plain and ordinary meaning. *Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000). We may not, under the guise of statutory construction, add exceptions, limitations, or conditions that the legislature did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994).

Here, the statute's plain language refers to an entity's net worth. Nothing in the statute indicates that, by using the term "net worth," the legislature meant anything other than the commonly understood meaning of the term. The statute does not contain an exception for public entities or provide for excluding any assets from the calculation

of net worth. In fact, by referring to "the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis" (215 ILCS 5/534.3(b)(iv) (West 2002)), the legislature appears to be mandating the consideration of a broad, rather than a narrow, range of assets in determining an entity's net worth.

The District's specific arguments to the contrary are unfounded. The District's first contention, that legislative restrictions on the use of money in its special funds means they cannot be considered assets of the District, is untenable. Initially, the District cites no authority for this contention. Virtually any entity could argue that most of its assets are not available for discretionary spending. A family may have money in individual retirement accounts or in a child's college fund. Shareholders of a closely held corporation may face severe restrictions on their ability to sell the corporation's stock. A company may hold money in a payroll account, or merely for paying bills as they become due. That does not mean that these funds are not "assets." Of course, to the extent that "bills" represent specific obligations, they are liabilities, which are properly deducted from the value of assets in calculating net worth. However, the District does not argue that the legislative restrictions on the use of some of its funds represent specific obligations that could be considered liabilities. Merely because the District cannot spend the money in these funds any way it wants does not mean that the funds are not its assets.

The District next cites particular statutory or regulatory provisions that provide for excluding "encumbered" assets from net worth. Generally, these provisions apply in very specific factual contexts and are not applicable here. For example, the District cites a regulation that defines the net worth of credit unions to exclude their "Allowance for Loan Losses Accounts." 38 Ill. Adm. Code § 190.165(a)(3), as amended by 28 Ill. Reg. 11699 (eff. July 29, 2004). Obviously, this provision does not apply here. The District is not a credit union. It does not contend that it has an "Allowance for Loan Losses" account or that it is required to maintain one. Thus, even if this provision applied to the District, it would result in a deduction of $0 from its net worth.

The District also cites section 221.1(b)(6) of the Insurance Code, which provides that the "general assets" of an insurance company include:

> "all property, real or personal, not specifically mortgaged, pledged, deposited as security or otherwise encumbered, and as to such specifically encumbered property the term includes all in excess of the amount necessary to discharge the sum or sums secured." 215 ILCS 5/221.1(b)(6) (West 2002).

This definition is consistent with the common definition of net worth. To say that an asset is "encumbered" is another way of saying that there is a specific liability attributable to that asset. See Merriam-Webster's Collegiate Dictionary 380 (10th ed. 2001) (defining "encumber" as "to burden with a legal claim (as a mortgage)"). Thus, the value of the asset is reduced by the amount of the encumbrance, as in calculating the net equity in a home. However, the statute allows a deduction only for "specifically encumbered" property. It also provides that any value of the asset above the amount of the encumbrance must be counted as an asset. Here, as noted, the District does not contend that any specific spending obligations are attributable to any of its funds. Mere general restrictions on use are not encumbrances or liabilities.

The District finally asserts that none of its funds or real property can be considered assets, because taxing entities such as itself "only have the authority to levy taxes to pay for the expenses of government, and not to accumulate funds for indefinite purposes or the enrichment of the public treasury." See *People ex rel. Kramer v. Chicago, Burlington & Quincy R.R. Co.*, 8 Ill. 2d 382, 387 (1956) (taxes are levied to defray the expenses of government and an unnecessary accumulation of money in the public treasury is unjust, impolitic, and against public policy).

The District's argument is difficult to follow.[1] The effect of the Fund's decision to exclude coverage will not be to force the District to needlessly accumulate wealth. Rather, the District will merely have to reimburse its employees who were injured on the job. Compensating injured employees is certainly a legitimate "expense[ ] of government." Simply because the District must use its funds for legitimate government purposes and not to accumulate wealth does not mean that the funds are not assets.

The District's second major contention is that the trial court erred in concluding that the District's net worth exceeds $25 million. The District argues that the calculation of its net worth should have included only the value of its Education Fund, which, according to the District, is the only fund available to pay the claims at issue. This argument largely overlaps the District's first contention. It, too, rests on the premise that the trial court erred in counting the District's various restricted-use funds as assets. Accordingly, much of what we

---

[1]The District does not assert in its brief what percentage of its funds is derived from taxation, as opposed to private donations, investments, or other sources. However, we will assume for the sake of argument that the vast majority of the District's funds comes from taxation.

said in connection with the District's first argument applies here as well.

Put simply, the statute creating the Fund does not allow an entity to selectively count its assets. Specifically, the statute does not provide for omitting resources that have been segregated for use for a particular purpose, as are many of the District's funds. In interpreting a statute, we are restricted to giving its unambiguous terms their plain and ordinary meaning. *Lulay*, 193 Ill. 2d at 466.

We note that the District cites no authority for its argument that only the Education Fund may be considered an asset, save for a reference to its earlier discussion of section 221.1(b)(6) of the Insurance Code. We have already rejected the argument that section 221.1(b)(6) mandates the conclusion that the District's special use funds are not assets.

The District further argues that the value of its physical facilities and real property should not have been included in the calculation of its net worth. We need not really decide this question because, as the Fund points out, and as we demonstrate below, the District clearly has more than $25 million in assets available for discretionary spending, even if its real property and other tangible assets are excluded.

In addition to the Education Fund, the District maintains a Working Cash Fund. As of the relevant date, this fund contained more than $9 million. The School Code provides that such a fund is to be used "to provide moneys with which to meet ordinary and necessary disbursements for salaries and other school purposes." 105 ILCS 5/20—4 (West 2002). The District's expert, Tim Cole, admitted that the District had the discretion to transfer money from the Working Cash Fund to the Education Fund. See 105 ILCS 5/20—5 (West 2002). He further admitted that, if the funds were combined, the District's discretionary assets would exceed $25 million.

The District points out that section 20—4 also provides that the Working Cash Fund "shall not be regarded as current assets available for school purposes." 105 ILCS 5/20—4 (West 2002). However, we agree with the Fund that this designation is inconsequential where the District has full authority to transfer money from the Working Cash Fund to the Education Fund. The payment of the claims at issue here appears to be precisely the type of expense for which the Working Cash Fund may be used. Thus, while the fund is not to be considered an asset "for school purposes," nothing prevents it from being considered an asset for purposes of calculating the District's net worth in seeking payment of its claims from the Fund.

Moreover, if we interpret section 20—4 as the District suggests, then the District has another problem. The District does not cite

similar language preventing any of its other funds from being considered as assets. The presence of this language in section 20—4 shows that the legislature knew how to exclude certain items from the calculation of "assets." The absence of such language relating to the District's other funds shows that the legislature intended for them to be considered assets of the District. The District acknowledges that its various funds totaled more than $56 million. Even excluding the Working Cash Fund would leave it with well in excess of $25 million in assets.

We note in passing that, although the District argues that its real property should not be considered "assets," its financial statement, which is attached to the complaint as an exhibit, lists buildings and improvements under the heading "Fixed Assets." The report shows that the District has total fixed assets of $204,903,120 and, allowing for depreciation, net fixed assets of $135,045,924.

Finally, the District argues that the trial court erred in concluding that the Fund's refusal to cover the District's claims furthered the policy behind the Fund. We need not reach this issue because we review only the trial court's judgment, not its reasoning. Because the trial court correctly applied the plain language of the statute, its statements about public policy are irrelevant.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.